**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JAMIL ASFOUR, et al.** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION NO. 1:07-cv-01764(HHK)** |
| | ) |
| **EMILIO T. GONZALEZ, et al.,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR TRANSFER**

The Plaintiffs, Jamil Asfour and Jomana Faisal Musmar, by counsel, respectfully oppose the Defendants' Motion to Dismiss or Transfer in the above-captioned case, for the reasons set forth below.

**I.    INTRODUCTION**

This Court should deny the Defendants' motion to dismiss or transfer.  The Defendants argue that dismissal of the Plaintiffs' complaint in the nature of mandamus is warranted for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted. *See* Defendants' Motion to Dismiss or Transfer at 1.  According to the Defendants, Plaintiff Jomana Faisal Musmar's complaint regarding the delay of the adjudication of her I-130 petition for alien relative is moot because, Defendants claim, USCIS granted the I-130 petition. According to Defendants, this Court is stripped of subject matter jurisdiction over the Plaintiff's complaint by 8 U.S.C. § 1252(a)(2)(B)(ii), which divests courts of jurisdiction to review "any decision or action of the Attorney General the authority for which is specified …to be in the discretion of the Attorney General, other than granting of [asylum]."   Defendants' Memorandum of Law in Support of Motion to Dismiss at 5-6 ("Def. Memo." hereinafter).  The Defendants

contend further that the Court lacks subject matter jurisdiction because the Defendants have "broad discretion to determine the pace and manner of adjudicating adjustment of status applications." Def. memo. at 10. Finally, the Defendants argue that there is "no APA or mandamus jurisdiction over Plaintiff's challenge." Id. The Plaintiffs address below why each of Defendants' arguments are unpersuasive and in error.

## II.    STANDARD OF REVIEW

### A.    Fed. R. Civ. P. 12(b)(1)

To overcome a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), the "plaintiff bears the burden of establishing the factual predicates of jurisdiction by a preponderance of the evidence." *Kaur v. Chertoff*, Slip Opinion, 2007 WL 1560319, at *4 (D.D.C. May 31, 2007) (*citing Erby v. United States*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006)). The doctrine of Rule 12(b)(1) decisions – that the plaintiff's claims must be "patently insubstantial," presenting no federal question suitable for decision – demands that the claims "be flimsier than 'doubtful or questionable'…they must be 'essentially fictitious.'" *Best v. Kelley*, 39 F. 3d 328, 330 (D.C. Cir. 1994) (*citing Hagans v. Lavine*, 415 U.S. 528, 536-538 (1973)). A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction will be denied unless "the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such a claim is wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 682 (1946); *see also Piorkowski v. Parziale*, Slip Opinion, 2003 WL 21037353, at *2 (D. Conn. May 7, 2003).

Furthermore, a motion to dismiss made pursuant to Rule 12(b)(1) can be either a facial or factual challenge. Here, the government's motion to dismiss pursuant to Rule 12(b)(1) is a facial challenge because it does not dispute the facts upon which the subject matter jurisdiction

depends; rather, it questions the sufficiency of the complaint.  *Yu v. Brown*, 36 F. Supp. 2d 922, 927 (D.N.M. 1999) (holding that the court did have federal question jurisdiction).  If the Rule 12(b)(1) motion is a facial challenge, the pleadings are taken as true for the purposes of the motion.  *See Jetform Corp. v. Unisys Corp.,* 11 D. Supp. 2d 788, 789 (D. Va. 1998) (holding that if the challenge is that the complaint fails to state sufficient facts to support subject matter jurisdiction, the analysis is similar to a Rule 12(b)(6) motion, whereby the facts in the complaint are assumed to be true); *see also Kaur,* 2007 WL 1560319, at *4; *Jerome Stevens Pharm., Inc. v. FDA,* 402 F.3d 1249, 1254 (D.C. Cir 2005).

### B.  Fed. R. Civ. P. 12(b)(6)

A court should not grant a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Abigail Alliance For Better Access to Developmental Drugs. v. Von Eschenback*, 445 F.3d 470, 475 (D.C. Cir. 2006) *(quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Swierkiewicz v. Sorema*, 534 U.S. 506, 514 (2002) (holding that a complaint may be dismissed under Rule 12(b)(6) "only if it is clear than no relief could be granted under any set of facts which could be proved consistent with the allegations"); *Kaur*, 2007 WL 1560319, at *5; *Song v. Klapakas*, Slip Opinion, 2007 WL 1101283, at *2 (E.D. Pa. Apr. 12, 2007); *Baker v. Director, United States Parole Comm'n,* 916 F.2d 725, 726 (D.C. Cir 1990).  The Court must treat the complaint's factual allegations as true and must grant "the plaintiff the benefit of all reasonable inferences from the facts alleged."  *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006); *see also Kaur*, 2007 WL 1560319, at *5.  The task of the Court in deciding on a Rule 12(b)(6) motion is "merely to assess the legal feasibility of the complaint."  *Kim v.*

*Ashcroft*, 340 F. Supp. 2d 384, 388 (S.D.N.Y. 2004); *see also Saunders v. Coughlin*, No. 92-Civ.-4289, 1994 WL 88108, at *2 (S.D.N.Y. Mar. 15, 1994).

To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff need only show that a reasonable inference can be drawn from his allegations.  Here, the "[e]xact amount of time that it is reasonable is a fact-specific inquiry, [a determination that] is premature at [the motion to dismiss] stage." *Wu v. Chertoff*, Slip Copy, 2007 WL 1223858, at *3 (N.D. Cal 2007) (denying government's motion to dismiss a mandamus complaint alleging unreasonable agency delay in adjudicating Plaintiff's adjustment of status application); *see also Yu*, 36 F. Supp. 2d at 934 ("What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case.")

### III.    PLAINTIFFS' CLAIM OVER THE I-130 PETITION FOR ALIEN RELATIVE IS NOT MOOT

The Defendants argue that Plaintiff Jomana Faisal Musmar's claim requesting adjudication of her I-130 petition filed on behalf of Plaintiff Jamil Asfour is moot.  Plaintiff Jomana Faisal Musmar, a U.S. citizen, had filed with Defendant USCIS an I-130 petition for alien relative pursuant to 8 U.S.C. § 1154 on September 23, 2005, to qualify her husband as an immediate relative under 8 U.S.C. § 1151(b)(2)(A)(i).  On April 27, 2006, both Plaintiffs were interviewed at the USCIS Washington Field Office.  Defendants now argue that "the form I-130 was approved by the adjudicator after the interview."  *See* Dibbins Decl. § 7 submitted by Defendants in support of their motion to dismiss or transfer (Court Doc. 4-2 at 3, par. 7).  However, the Case Status Search on the USCIS website completed by Plaintiffs on January 29, 2008 reveals, contrary to Washington Field Office Director Susan Dibbins' declaration under penalty of perjury, that Plaintiffs' I-130 petition remains pending without adjudication at the USCIS National Benefits Center.  *See* Exhibit 1.  Plaintiffs have never received an approval of

the I-130 petition which, according to Defendant USCIS' own website, remains unadjudicated at this time.

Therefore, the Defendants' argument that "[t]he approval of that application moots Plaintiff's claim concerning the adjudication of the I-130 applications, thereby depriving this Court of jurisdiction over those claims," is wholly unfounded.  Def. Memo. at 11.  Unless, and until, Defendants give written evidence that the I-130 petition has indeed been approved, Plaintiffs' request that this Court order Defendants to adjudicate that petition within a reasonable amount of time, should not be dismissed.

**IV.  JURISDICTION OVER PLAINTIFF'S MANDAMUS COMPLAINT IS NOT STRIPPED BY 8 U.S.C. § 1252(a)(2)(B)(ii)**

The Defendants contend that this Court lacks jurisdiction over the Plaintiffs' complaint pursuant to 8 U.S.C. § 1252(a)(2)(B)(ii), which strips the federal courts of jurisdiction to review "a discretionary action and decision."  Def. Memo. at 13.  The Defendants' arguments are unpersuasive and are contrary to the overwhelming "weight or authority" on this issue, which clearly holds that CIS has "a non-discretionary duty to process or adjudicate an adjustment application" and that "that duty supports a mandamus action."  *Duan v. Zamberry*, Slip Copy, 2007 WL 626116 (W.D. Pa. Feb. 23, 2007); *see also Liu v. Novak*, 509 F.Supp.2d 1 (D.D.C. 2007); *Aslam v. Mukasey,* Slip Copy, 2008 WL 220708 (E.D.Va. Jan. 25, 2008); *Ren v. Mueller*, Slip Copy, 2008 WL 191010 (M.D.Fla. Jan. 22, 2008); *Camerana v. Chertoff*, Slip Copy, 2008 WL 161481 (N.D. Ill. Jan. 16, 2008); *Lidems v. Mukasey*, Slip Copy, 2008 WL 171078 (E.D.Wis. Jan. 16, 2008); *Xia v. Gonzales*, Slip Copy, 2008 WL 168672 (W.D.Was. Jan. 15, 2008); *Al Kurdy v. USCIS*, Slip Copy, 2008 WL 151277 (D.Neb. Jan. 10, 2008); *Garrido v. Mueller*, Slip Copy, 2008 WL 89631 (N.D.Tex. Jan. 8, 2008); *He v. Chertoff*, Slip Copy, 2008

WL 36634 (N.D.Ill. Jan. 2, 2008); *Sherdil v. Chertoff*, Slip Copy, 2007 WL 4564111 (D.Ariz. Dec. 20, 2007); *Ansari v. U.S.Citizenship & Immigration Serv.*, Slip Copy, 2007 WL 4553920 (D.Neb. Dec. 18, 2007); *Miltova v. Chertoff*, Slip Copy, 2007 WL 4373045 (E.D.Pa. Dec. 13, 2007); *Zhu v. Chertoff*, Slip Copy, 2007 WL 4365733 (W.D.Mo. Dec. 11, 2007); *Jin v. Heinauer*, Slip Copy, 2007 WL 4287657 (S.D. Ohio Dec. 4, 2007); *Ahmadi v. Chertoff*, Slip Copy, 2007 WL 4181659 (N.D.Tex. Nov. 27, 2007); *Asrani v. Chertoff*, Slip Copy, 2007 WL 3521366 (D.Minn. Nov. 14, 2007); *Shah v. Hansen*, Slip Copy, 2007 WL 3232353 (N.D.Ohio Oct. 31, 2007); *Saleem v. Keisler*, Slip Copy, 2007 WL 3132233 (W.D.Wis. Oct. 26, 2007); *Belegradek v. Gonzales*, Slip Copy, 2007 WL 3091078 (N.D.Ga. Oct. 18, 2007); *Sawad v. Frazier*, Slip Copy, 2007 WL 2973833 (D.Minn. Oct. 9, 2007); *Bondarenko v. Chertoff*, Slip Copy, 2007 WL 2693642 (W.D.N.Y. Sep. 11, 2007); *Dong v. Chertoff*, 513 F.Supp.2d 1158 (N.D.Cal. Sep. 6, 2007); *He v. Chertoff*, Slip Copy, 2007 WL 2572359 (D.Vt. Sept. 4, 2007); *Tong v. Chertoff*, Slip Copy, 2007 WL 2462187 (E.D.Ky Aug. 29, 2007); *Liu v. Chertoff,* Slip Copy, 2007 WL 2433337 (E.D.Cal. Aug. 22, 2007); *Totonchi v. Gonzales*, Slip Copy, 2007 WL 2331937 (N.D.Ohio Aug. 13, 2007); *Cao v. Upchurch*, 496 F.Supp. 2d 569 (E.D.Pa. 2007); *Konchitsky v.* Chertoff, Slip Copy, 2007 WL 2070325 (N.D.Cal. July 13, 2007); *Landry v. Chertoff,* Slip Copy, 2007 WL 2007996 (E.D.La. July 5, 2007); *Tang v. Chertoff*, 493 F.Supp.2d 148 (D.Mass. 2007); *Oiu v. Chertoff*, Slip Copy, 2007 WL 1831130 (N.D.Cal. June 25, 2007); *Huang v. Gonzales*, Slip Copy, 2007 WL 1302555 (W.D.Was. May 2, 2007); *Linville v. Barrows*, 489 F.Supp.2d 1278 (W.D.Okla. 2007); *Ma & Liu v. Gonzales*, Slip Copy, 2007 WL 1655188 (W.D. Wash. June 5, 2007); *Pool v. Gonzales*, Slip Copy, 2007 WL 1613272 (D.N.J. June 1, 2007); *Ibrahim v. Chertoff*, Slip Copy 2007 WL 1558521 (S.D. Cal May 25, 2007); *Chen v. Heinauer,* Slip Copy, 2007 WL 1468789 (W.D. Wash. May 18, 2007); *Koren v. Chertoff*, Slip

Copy, 2007 WL 1431948 (D. Conn. May 14, 2007); *Dmitriev v. Chertoff*, Slip Copy, 2007 WL 1319533 (N.D. Cal May 4, 2007); *Huang v. Gonzales*, Slip Copy, 2007 WL 1302555 (W.D. Wash. May 2, 2007); *Wu*, 2007 WL 1223858; *Song*, 2007 WL 1101283; *Mahd v. Chertoff*, Slip Copy, 2007 WL 891867 (D. Colo. Mar. 22, 2007); *Singh v. Still*, 470 F. Supp. 2d 1064 (N.D. Cal 2006); *Aboushaban v. Mueller*, Slip Copy, 2006 WL 3041086 (N.D. Cal. Oct. 24, 2006); *Zahani v. Neufeld*, Slip Copy, 2006 WL 2246211 (M.D. Fla. June 26, 2006); *Elkhatib v. Butler*, Slip Copy, 2005 WL 5226742 (S.D. Fla. June 7, 2005); *ElMalky v. Upchurch*, Slip Copy, 2007 WL 944330 (N.D.Tex. Mar. 28, 2007); *Fu v. Gonzales*, Slip Copy, 2007 WL 1742376 (N.D.Cal. May 22, 2007); *Okunev v. Chertoff*, Slip Copy, 2007 WL 2023553 (N.D.Cal. July 11, 2007); *Elhaouat v. Mueller*, Slip Copy, 2007 WL 2332488 (E.D.Pa. Aug. 9, 2007); *Lopez v. Dep. of Homeland Security*, Slip Copy, 2007 WL 2728353 (M.D.Fla. Sept. 17, 2007); *Alkeylani v. DHS*, 514 F.Supp.2d 258 (D.Conn. 2007); *Toor v. Still*, Slip Copy, 20007 WL 2028407 (N.D.Cal. July 10, 2007); *Haidari v. Frazier*, Slip Copy, 2006 WL 3544922 (D.Minn. Dec. 8, 2006); *Saleh v. Ridge*, 367 F.Supp.2d 508 (S.D.N.Y. 2005); *Razaq v. Poulos*, Slip Copy, 2007 WL 61884 (N.D.Cal. Jan. 8, 2007).

The Plaintiff does not dispute that the Secretary of the U.S. Department of Homeland Security ("DHS") – and the Defendant CIS acting on his behalf – has discretion to grant or deny adjustment of status applications under Section 245(a) of the Immigration & Nationality Act ("INA"), 8 U.S.C. § 1255(a).  However, CIS does *not* enjoy unfettered discretion to unreasonably and, as the Defendants implicitly argue, indefinitely delay adjudication of a properly filed application.  The agency's discretion applies only to the decision whether to *grant* or *deny* an individual claim, not to whether the application should be adjudicated in the first place.  CIS is not required to grant the Plaintiff's adjustment, and the agency's ultimate decision

is not subject to review by the federal courts absent constitutional infirmity.  8 U.S.C. §

1252(a)(2)(B)(ii).  Such discretion over the *result*, however, cannot be stretched to permit

indefinite delay in the *adjudication* of a properly filed application.  The Plaintiff is entitled to a

decision in this case, because the failure to render any decision has become unreasonable as a

matter of law.

Section 242(a)(2)(B) of the INA, 8 U.S.C. § 1252(a)(2)(B), as amended by the REAL ID

Act of 2005, Pub. L. No. 109-13 (May 11, 2005), eliminated the authority of the federal courts to

review decisions by the government to grant to deny discretionary relief, including adjustment of

status.  Specifically, subsection (ii) of § 242(a)(2)(B) provides that "no court shall have

jurisdiction to review…(ii) any other decision or action of the Attorney General or the Secretary

of Homeland Security the authority for which is specified under this subchapter to be in the

discretion of the Attorney General or the Secretary of Homeland Security…" 8 U.S.C. §

1252(a)(2)(B)(ii).[1]  Notwithstanding this jurisdiction-stripping provision, however, this Court

may exercise jurisdiction in the instant case because the Plaintiffs challenge only the

government's failure to *adjudicate* their I-130 petition for alien relative and Plaintiff Asfour's

application for adjustment of status in the first instance.  Section 1252(a)(2)(B)(ii) does not strip

federal courts of jurisdiction where – as in this case – the government has a nondiscretionary

duty to act.  As was set forth in the original complaint, CIS owes the Plaintiff a duty to process

and adjudicate his application for adjustment of status, and it has unreasonably failed to perform

that nondiscretionary duty.  *See* Complaint; *see also* 8 U.S.C. § 1103; 8 C.F.R. §§ 245.2(a)(5)(i);

245.6.

---

[1] "[T]his subchapter" refers to Subchapter II of Chapter 12 of Title 8 of the U.S. Code, which includes INA § 245, 8 U.S.C. § 1255.

In their motion to dismiss, the Defendants attempt to blur this critical distinction –
between a discretionary act of decision-making and a non-discretionary failure to adjudicate –
and erroneously urge this Court to find that the jurisdiction-stripping language of 8 U.S.C. §
1252(a)(2)(B)(ii) is all-encompassing, and that the agency's latitude to decide applications is
unfettered.  According to the Defendants, INA § 245 vests the agency with discretion over the
entire process of adjudicating an adjustment of status application, including the pace at which
that action proceeds.  *See* Def. Memo. at 14 (referring to *Orlov v. Howard*, 2007 WL 4293490
(D.D.C. Dec. 10, 2007) and *Luo v. Keisler*, 2007 WL 3357241 (D.D.C. Nov. 14, 2007).
However, the overwhelming majority of courts that have addressed the issue presented here –
whether failure or delay in processing an application for adjustment of status constitutes an
"action" by CIS under 8 U.S.C. § 1252(a)(2)(B)(ii), thereby stripping the courts of jurisdiction to
consider mandamus claim such as that brought by the Plaintiff – have rejected the government's
arguments.  These courts have concluded, to the contrary, that subject matter jurisdiction *does*
exist and that mandamus relief may, under certain circumstances, be appropriate.  *See, e.g., Duan
v. Zamberry*, Slip Copy, 2007 WL 626116 (W.D. Pa. Feb. 23, 2007); *see also Liu v. Novak*, 509
F.Supp.2d 1 (D.D.C. 2007); *Aslam v. Mukasey,* Slip Copy, 2008 WL 220708 (E.D.Va. Jan. 25,
2008); *Ren v. Mueller*, Slip Copy, 2008 WL 191010 (M.D.Fla. Jan. 22, 2008); *Camerana v.
Chertoff*, Slip Copy, 2008 WL 161481 (N.D. Ill. Jan. 16, 2008); *Lidems v. Mukasey*, Slip Copy,
2008 WL 171078 (E.D.Wis. Jan. 16, 2008); *Xia v. Gonzales*, Slip Copy, 2008 WL 168672
(W.D.Was. Jan. 15, 2008); *Al Kurdy v. USCIS*, Slip Copy, 2008 WL 151277 (D.Neb. Jan. 10,
2008); *Garrido v. Mueller*, Slip Copy, 2008 WL 89631 (N.D.Tex. Jan. 8, 2008); *He v. Chertoff*,
Slip Copy, 2008 WL 36634 (N.D.Ill. Jan. 2, 2008); *Sherdil v. Chertoff*, Slip Copy, 2007 WL
4564111 (D.Ariz. Dec. 20, 2007); *Ansari v. U.S.Citizenship & Immigration Serv.*, Slip Copy,

2007 WL 4553920 (D.Neb. Dec. 18, 2007); *Miltova v. Chertoff*, Slip Copy, 2007 WL 4373045 (E.D.Pa. Dec. 13, 2007); *Zhu v. Chertoff*, Slip Copy, 2007 WL 4365733 (W.D.Mo. Dec. 11, 2007); *Jin v. Heinauer*, Slip Copy, 2007 WL 4287657 (S.D. Ohio Dec. 4, 2007); *Ahmadi v. Chertoff*, Slip Copy, 2007 WL 4181659 (N.D.Tex. Nov. 27, 2007); *Asrani v. Chertoff*, Slip Copy, 2007 WL 3521366 (D.Minn. Nov. 14, 2007); *Shah v. Hansen*, Slip Copy, 2007 WL 3232353 (N.D.Ohio Oct. 31, 2007); *Saleem v. Keisler*, Slip Copy, 2007 WL 3132233 (W.D.Wis. Oct. 26, 2007); *Belegradek v. Gonzales*, Slip Copy, 2007 WL 3091078 (N.D.Ga. Oct. 18, 2007); *Sawad v. Frazier*, Slip Copy, 2007 WL 2973833 (D.Minn. Oct. 9, 2007); *Bondarenko v. Chertoff*, Slip Copy, 2007 WL 2693642 (W.D.N.Y. Sep. 11, 2007); *Dong v. Chertoff*, 513 F.Supp.2d 1158 (N.D.Cal. Sep. 6, 2007); *He v. Chertoff*, Slip Copy, 2007 WL 2572359 (D.Vt. Sept. 4, 2007); *Tong v. Chertoff*, Slip Copy, 2007 WL 2462187 (E.D.Ky Aug. 29, 2007); *Liu v. Chertoff,* Slip Copy, 2007 WL 2433337 (E.D.Cal. Aug. 22, 2007); *Totonchi v. Gonzales*, Slip Copy, 2007 WL 2331937 (N.D.Ohio Aug. 13, 2007); *Cao v. Upchurch*, 496 F.Supp. 2d 569 (E.D.Pa. 2007); *Konchitsky v.* Chertoff, Slip Copy, 2007 WL 2070325 (N.D.Cal. July 13, 2007); *Landry v. Chertoff,* Slip Copy, 2007 WL 2007996 (E.D.La. July 5, 2007); *Tang v. Chertoff*, 493 F.Supp.2d 148 (D.Mass. 2007); *Oiu v. Chertoff*, Slip Copy, 2007 WL 1831130 (N.D.Cal. June 25, 2007); *Huang v. Gonzales*, Slip Copy, 2007 WL 1302555 (W.D.Was. May 2, 2007); *Linville v. Barrows*, 489 F.Supp.2d 1278 (W.D.Okla. 2007); *Ma & Liu v. Gonzales*, Slip Copy, 2007 WL 1655188 (W.D. Wash. June 5, 2007); *Pool v. Gonzales*, Slip Copy, 2007 WL 1613272 (D.N.J. June 1, 2007); *Ibrahim v. Chertoff*, Slip Copy 2007 WL 1558521 (S.D. Cal May 25, 2007); *Chen v. Heinauer,* Slip Copy, 2007 WL 1468789 (W.D. Wash. May 18, 2007); *Koren v. Chertoff*, Slip Copy, 2007 WL 1431948 (D. Conn. May 14, 2007); *Dmitriev v. Chertoff*, Slip Copy, 2007 WL 1319533 (N.D. Cal May 4, 2007); *Huang v. Gonzales*, Slip Copy, 2007 WL 1302555 (W.D.

Wash. May 2, 2007); *Wu,* 2007 WL 1223858; *Song,* 2007 WL 1101283; *Mahd v. Chertoff*, Slip

Copy, 2007 WL 891867 (D. Colo. Mar. 22, 2007); *Singh v. Still*, 470 F. Supp. 2d 1064 (N.D. Cal

2006); *Aboushaban v. Mueller*, Slip Copy, 2006 WL 3041086 (N.D. Cal. Oct. 24, 2006); *Zahani*

*v. Neufeld*, Slip Copy, 2006 WL 2246211 (M.D. Fla. June 26, 2006); *Elkhatib v. Butler*, Slip

Copy, 2005 WL 5226742 (S.D. Fla. June 7, 2005); *ElMalky v. Upchurch*, Slip Copy, 2007 WL

944330 (N.D.Tex. Mar. 28, 2007); *Fu v. Gonzles*, Slip Copy, 2007 WL 1742376 (N.D.Cal. May

22, 2007); *Okunev v. Chertoff*, Slip Copy, 2007 WL 2023553 (N.D.Cal. July 11, 2007); *Elhaouat*

*v. Mueller*, Slip Copy, 2007 WL 2332488 (E.D.Pa. Aug. 9, 2007); *Lopez v. Dep. of Homeland*

*Security*, Slip Copy, 2007 WL 2728353 (M.D.Fla. Sept. 17, 2007); *Alkeylani v. DHS*, 514

F.Supp.2d 258 (D.Conn. 2007); *Toor v. Still*, Slip Copy, 20007 WL 2028407 (N.D.Cal. July 10,

2007); *Haidari v. Frazier*, Slip Copy, 2006 WL 3544922 (D.Minn. Dec. 8, 2006); *Saleh v. Ridge*,

367 F.Supp.2d 508 (S.D.N.Y. 2005); *Razaq v. Poulos*, Slip Copy, 2007 WL 61884 (N.D.Cal.

Jan. 8, 2007).

　　　"These courts have reasoned" – as the Plaintiff argues in this case – "that even though the

actual decision to grant or deny an application for adjustment of status is discretionary, the

USCIS has a *non-discretionary duty* to act on applications *within a reasonable time." Pool,*

2007 WL 1613272, at *2 (emphasis added) ("[T]he obligation of the USCIS to process

applications is not discretionary and is reviewable by the Court.").  Consequently, the courts

have time and again denied government motions to dismiss arguing a lack of jurisdiction under 8

U.S.C. § 1252(a)(2)(B)(ii).  *E.g., Ma & Liu*, 2007 WL 1655188, at *3; *Pool*, 2007 WL 1613272,

at *2; *Ibrahim,* 2007 WL 1558521, at *3; *Chen,* 2007 WL 1468789, at *3; *Koren,* 2007 WL

1431948, at *5; *Dmitriev*, 2007 WL 1319533, at *2; *Huang*, 2007 WL 1302555, at *3; *Wu*, 2007

WL 1223858, at *2-3; *Song,* 2007 WL 1101283, at *4; *Duan*, 2007 WL 626116, at *3; *Mahd,*

2007 WL 891867, at *3; *Singh*, 470 F. Supp. 2d at 1067; *Aboushaban*, 2006 WL 3041086, at *2;

*Zahani*, 2006 WL 2246211, at *1; *Elkhatib*, 2005 WL 5226742, at *2. As this parade of

decisions makes clear, the "weight of authority" does not support the Defendants' position.

Some U.S. District Court opinions are particularly instructive on this issue, explaining

why, despite the jurisdiction-stripping language of INA § 1252(a)(2)(B)(ii), the courts retain

jurisdiction to review a noncitizen's claim of unreasonable delay in adjudicating an adjustment

of status application. *See Aslam v. Mukasey*, 2007 WL 220708 (E.D.Va. Jan. 25, 2008); *Liu v.*

*Novak*, 509 F.Supp.2d 1 (D.D.C. 2007); *Duan*, 2007 WL 626116.

**Aslam v. Mukasey**

In *Aslam*, the U.S. District Court for the Eastern District of Virginia denied the

government's motion to dismiss a mandamus action brought by an adjustment of status

applicant, who, just like Plaintiffs in the case at bar, claimed that adjudication of his I-485

application had been unreasonably delayed by USCIS—specifically for a period of almost three

years. *Aslam*, 2007 WL 5616, at *1. The Court rejected the government's contention that INA §

1252(a)(2)(B)(ii) stripped it of jurisdiction to consider the applicant's claim:

> Recognizing the "well-settled presumption favoring interpretations of statutes that
> allow judicial review of administrative action," *McNary v. Haitian Refugee Ctr.,*
> *Inc.,* 498 U.S. 479, 496 (1991), a plain reading of Section 1252(a)(2)(B)(ii)
> confirms that the INA only strips the judiciary of jurisdiction to review those
> discretionary decisions and actions that are "specified under this subchapter." *See*
> *Khan v. Att'y Gen.,* 448 F.3d 226, 232 (3d Cir. 2006). ("The key to §
> 1252(a)(2)(B)(ii) lies in its requirement that the discretion giving rise to the
> jurisdictional bar must be 'specified' by statute.") (citation and alternations
> omitted); *Ahmed v. Gonzales*, 447 F.3d 433, 436 (5th Cir. 2006) (same); *Spencer*
> *Enter, Inc. v. United States*, 345 F.3d 683, 689 (9th Cir. 2003) (same). Although
> the INA places the decision of whether to adjust status in the sound discretion of
> the Secretary, it says nothing about the Secretary's discretion to set the pace of
> that decision. Accordingly, the Court retains jurisdiction under the APA to
> determine whether the Secretary has unlawfully delayed or withheld final
> adjudication of a status adjustment application.

> This conclusion is supported by the way in which Congress titled this statutory paragraph, as "Denials of discretionary relief," and by the concern to which its subparagraph was directed. As the legislative history reveals, Congress was concerned that judicial review was unduly interfering with decisions to remove problematic aliens. *See Tang v. Chertoff*, 493 F.Supp. 148, 152 (D.Mass. 2007) ("[T]he original purpose of this subparagraph was to ensure removal of those individuals adjudicated removable by making the Attorney General's decision final as to relief by adjustment of status.") (citing S. Rep. No. 104-249 (1996); H.R. Rep. No. 104-469 (1996)). With that goal in mind, Congress removed adjustment decisions and accompanying orders of removal from the purview of the federal courts. Aslam's case does not implicate those concerns because he is not asking a federal court to frustrate a denial of discretionary relief, but rather to compel a decision on whether he is entitled to that relief.

*Aslam*, 2008 WL 5616, at *3. Similarly, Plaintiff Asfour is not asking this Court to frustrate a denial of his application for adjustment of status, but rather to compel a decision on whether he is entitled to that relief. Defendants urge this Court to follow the rulings of Judge Bates and Judge Leon in this jurisdiction who have both found that section 1252(a)(2)(B)(ii) strips the federal courts of subject matter jurisdiction. *See Orlov v. Howard*, 523 F.Supp.2d 30 (D.D.C. 2007); *Luo v. Keisler*, 521 F.Supp.2d 72 (D.D.C. 2007). Both opinions rely heavily on the ruling of Judge Ellis in *Safadi v. Howard*, 466 F.Supp.2d 696 (E.D.Va. 2006). *Safadi* concluded that the INA prohibited judicial review of "any act or series of acts that is discretionary within the adjustment process," including the Secretary's decision to complete background and security checks and, by implication, the pace at which those checks proceed. *Safadi*, 466 F.Supp.2d at 699. As the Court in *Aslam* found—

> *Safadi* would, therefore, appear to treat inaction by the Secretary as "action" under the INA. Such a conclusion would lead to the unacceptable result that as long as CIS confirms that the applicant's name had been submitted to the FBI, courts would have no jurisdiction to review any delays, no matter how long or inexcusable. *See Sierra Club v. Thomas*, 828 F.2d 783, 793 (D.D.Cir. 1987) ("[I]naction represents action that has been 'unlawfully withheld.'…").

> Perhaps, recognizing this conundrum, the *Safadi* court qualified its reasoning by recognizing that it was not addressing a circumstance where "USCIS refused altogether to process an adjustment application or where the delay was so

unreasonable as to be tantamount to a refusal to process the application."  466 F.Supp.2d at 700.  the very inclusion of this disclaimer undermines *Safadi*'s central conclusion that the INA imposes an absolute jurisdictional bar to a federal court's consideration of the pace of the government's adjudication.

Congress quite sensibly committed the merits of the decision on applications for adjustment of status to the Executive Branch, which, by its nature, retains the competence and expertise to evaluate whether a particular individual is eligible for legal permanent residence.  At the same time, it is clear from the text of the INA that Congress intended the Secretary of Homeland Security to process and act on applications.  If the pace of the Secretary's decision were immune from judicial review, the Executive Branch could unilaterally impose a *de facto* moratorium on all adjustment of status applications simply by delaying a final decision.  For these reasons, the Court rejects the reasoning in *Safadi* and joins the majority of district courts that have found jurisdiction.

*Aslam*, 2008 WL 5616, at *3-4.

### Liu v. Novak

Judge Sullivan in this District has clearly ruled on the issue after a thorough analysis of

the case law then in existence, and of the statutes at bar:

Having considered the arguments on both sides of the issue, the Court is persuaded for three reasons that § 1252(a)(2)(B)(ii) is not a bar to jurisdiction over plaintiff's claim.  First, the provision only applies to jurisdiction to review a "decision or action" of the Department of Homeland Security.  In this case, plaintiff is challenging the absence of a decision or action, specifically the failure to adjudicate his application.  *See Nyaga v. Ashcroft*, 186 F.Supp.2d 1244, 1252 (N.D.Ga. 2002) ("Plaintiff is not seeking a review of a decision or action, which would be barred, but is seeking remediation of the lack of action, which is not barred.") *rev'd on other grounds by* 323 F.3d 906 (11th Cir. 2003); *Paunescu v. INS*, 76 F.Supp.2d 896, 900 (N.D.Ill. 1999) ("Plaintiffs do not ask this court to 'review' a governmental action, but to examine and rectify a gross inaction.").  As the Seventh Circuit has indicated, by the use of the terms "decision or action," § 1252(a)(2)(B)(ii) only bars review of actual discretionary actions, not the failure to render a decision.  *See Iddir v. INS*, 301 F.3d 492, 497-98 (7th Cir. 2002) (citing *Nyaga* and *Paunescu* with approval).

The Court is not persuaded by the "plain meaning" argument in *Safadi* clever though it may be.  The court in *Safadi* artfully made the argument that the inaction at issue here is in fact a series of unspecified, affirmative, discretionary actions. 466 F.Supp.2d at 699.  Plaintiff, however, is not challenging any of these discrete actions, and the government has not even specified what steps it has taken in processing plaintiff's particular application.  Moreover, the argument in *Safadi*

essentially finds that inaction is within the "plain meaning" of action. The established body of administrative law though, distinguishes between the two. *See Sierra Club v. Thomas*, 828 F.2d 783, 793 (D.D.Cir. 1987) ("inaction represents action that has been unlawfully withheld"). For instance, the APA relies on this distinction in 5 U.S.C. § 706, as subsection (1) remedies unlawful agency inaction and subsection (2) remedies unlawful agency action. As action and inaction are distinct, and § 1252(a)(2)(B)(ii) by its plain terms only covers the former, the provision does not apply to plaintiff's claim.

Second, § 1252(a)(2)(B)(ii) does not apply to all discretionary decisions, but only those decisions "the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." Therefore, the provision only applies to the "narrower category of decisions where Congress has taken the additional step to specify that the sole authority for the action is in the Attorney General's discretion." *Alaka v. Attorney Gen. of U.S.*, 456 F.3d 88, 95 (3d Cir. 2006); *see Spencer Enters, Inc. v. United States*, 345 F.3d 683, 690 (9th Cir. 2003) (holding that the provision only bars review of "matters of pure discretion, rather than discretion guided by legal standards"); *see also Zhu v. Gonzales*, 411 F.3d 292, 295 (D.C.Cir. 2005) (declining to decide how discretionary a decision must be to be barred from review). Within the subchapter referred to, Congress specified that the ultimate decision of whether an immigrant's status is "adjusted" lies with the "Attorney General, in his discretion." 8 U.S.C. § 1255(a). The subchapter, however, "does not address, much less specify any discretion associated with, the pace of application processing." *Duan*, 2007 WL 626116, at *2. Thus, plaintiff's claim is not barred by § 1252(a)(2)(B)(ii) for this reason as well.

Finally, recognizing that reasonable jurists may differ in resolving these questions of statutory interpretation, the Court relies on the applicable presumptions, all of which are in favor of finding jurisdiction over plaintiff's claim. First, Congress' intent to limit federal jurisdiction must be "clear and convincing" in order to preclude judicial review. *Bd. Of Governors of the Fed. Reserve Sys. V. MCorp. Fin., Inc.*, 502 U.S. 32, 44, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991). Second, there is a general presumption in favor of judicial review of administrative acts. *See INS v. St. Cyr*, 533 U.S. 289, 298, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). Tjird, there is the principle that statutory ambiguities in immigration laws are resolved in favor of immigrants. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 449, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). In light of all three principles, the Court concludes that § 1252(a)(2)(B)(ii) does not eliminate this Court's jurisdiction over plaintiff's claim.

*Liu*, 509 F.Supp.2d at 6-7.

**Duan v. Zamberry**

In D*uan*, the U.S. District Court for the Western District of Pennsylvania denied the government's motion to dismiss a mandamus action brought by an adjustment of status applicant, who claimed that adjudication of his I-485 had been unreasonably held up by CIS – specifically, for a period of more than two years. *Duan*, 2007 WL 626116, at *1. The court rejected the government's contention that INA § 1252(a)(2)(B)(ii) stripped it of jurisdiction to consider the applicant's claim, because the subchapter within which the provision falls "specifies only that it is within the discretionary of the Attorney General to adjust one's status; it does *not* address, much less specify any discretion associated with, the *pace* of application processing." *Id.* at *2 (emphasis added). Consequently, the court found § 1252(a)(2)(B)(ii) "inapplicable" to the petitioner's claim of adjudicatory delay. *Id.; see also Alaka v. Att'y General,* 456 F.3d 88, 95 (3d Cir. 2006) ("The jurisdiction stripping language [of Section 1252] applies not to all decisions the Attorney General is entitled to make, but to a narrower category of decisions where Congress has taken the additional step to specify that the sole authority for the action is in the Attorney General's discretion.") *Khan v. United States*, 448 F.3d 226, 232 (3d Cir. 2006) (stating that, as a general matter, there is a "strong presumption in favor of judicial review of administrative action"). Drawing a clear distinction between discretionary agency actions that are explicitly immune to review and actions which fall outside the statute's jurisdiction-stripping influence, the court explained:

> Although the speed of processing may be "discretionary" in the sense that it is determined by choice, and that it rests on various decisions that Defendants may be entitled to make, *it is not discretionary in the matter required by the jurisdiction-stripping language of the IIRIRA.*

*Id.* (emphasis added); *see also, e.g., Valenzuela v. Kehl*, Slip Copy, 2006 WL 2474088, at **19-20 (N.D. Tex. Aug. 23, 2006). Again, in reaching its determination, the *Duan* court expressly rejected the reasoning of *Safadi v. Howard*, 466 F. Supp. 2d 696 (E.D. Va. 2006), which is relied

upon by the Defendants in support of their motion to dismiss and is relied on by the courts in *Luo v. Keisler*, 2007 WL 3357241, and in *Orlov v. Chertoff*, 2007 WL 4293490.  According to the *Duan* court's Chief Judge, "to read the jurisdiction-stripping statute as did the *Safadi* court would render toothless all timing restraints, including those imposed by the APA[.]"  *Duan*, 2007 WL 626116, at *3.  Judge Ambrose declared further,

> Such a result would amount to a grant of permission for inaction, and a purposeful disregard of the potential for abuse thereof, on immigration matters.  I will not, therefore, follow the line of reasoning represented by *Safadi*.  Instead, I find that Section 1252(a)(2)(B)(ii) *does not divest this Court of jurisdiction* over the Plaintiff's claims.

*Id.* (emphasis added).  A number of other district courts, from various judicial circuits, have concurred with *Duan's* reasoning.  *See, e.g., Koren*, 2007 WL 1431948, at *4 ("[T]his Court is not persuaded by the *Safadi* court's reasoning…Accordingly, this Court finds that § 1252(a)(2)(B)(ii) does not divest this Court of subject matter jurisdiction over Plaintiffs' claim that the adjudication of their applications for adjustment of status has been unreasonably delayed."); *Chen*, 2007 WL 1468789, at *3 ("[T]he Court is not persuaded by defendants' reliance on *Safadi v. Howard*" but finds, contrary to *Safadi,* "that section 1252(a)(2)(B)(ii) does not divest the Court of jurisdiction over plaintiff's claim."); *Huang,* 2007 WL 1302555, at *3 ("[T]he Court is not persuaded by defendants' reliance on *Safadi v. Howard.*").

Duan also examined, and found unpersuasive, the Texas court's decision in *Mustafa v. Pasquarell*, 2006 WL 488399 (W.D. Tex. Jan. 10, 2006).  Judge Ambrose's thoughtful analysis bears repetition in its entirety:

> *Mustafa* considered mandamus standards, rather than the jurisdiction-stripping statute at issue.  *Mustafa* was based, in part, on the conclusion that because the government statute and regulations do not impose a specific time limit, the timing of an adjudication must be considered a matter of discretion.  *Alaka* [456 F. 3d at 95] and its progeny have rendered this reasoning unpersuasive; the absence of language cannot

17

mean the presence of discretion.  The *Mustafa* court also relied on 8 C.F.R. 103.2(b)(18), which permits the withholding of adjudication.  The present Defendants do not assert that they have acted pursuant to that Section.  In any event, however, action under that Section would *still be subject to the reasonableness requirement imposed by the APA.*

*Duan,* 2007 WL 626116, at *2 n. 2. (emphasis added) (citing *Gemini Realty, Inc. v. Gonzalez,*

Slip copy, 2006 WL 2927562 (M.D. Fla. Oct. 12, 2006)).  The Chief Judge observed further,

I note, too, that both *Safadi* and *Mustafa* involved plaintiffs, either explicitly or by the court's framing of the issue, who sought relief in the nature of immediate adjudication of an adjustment application.  In *Mustafa*, the court specifically found no statutory entitlement to an immediate adjudication.  In contrast, the present Plaintiff seeks an Order compelling Defendants to *immediately take all actions necessary*  to adjudicate her application, rather than to immediately adjudicate the application.

*Id.* at *2 n.2 (emphasis added) (internal citations omitted).

Likewise in the case at bar.  Contrary to the Defendants' contentions, the Plaintiffs have never insisted upon immediate adjudication of his adjustment application.  Rather, they have requested only that the Defendants and those acting under them take all appropriate action to adjudicate the Plaintiffs' I-130 petition for alien relative and Plaintiff Asfour's application to adjust status without further delay.  The legal opinions discussed above are but three recent examples of the numerous federal court decisions holding that applicants for adjustment of status are entitled to adjudication within a reasonable period of time, and that the government's inactions to that end are not wholly discretionary.  As these decisions demonstrate, with the dramatic increase in background check delays in recent years, the federal courts have witnessed a corresponding increase in mandamus litigation by non-citizens hoping to obtain a decision on their delayed applications for immigration benefits, in particular adjustment of status claims. The government has routinely urged dismissal of such actions, insisting that the plaintiffs are seeking review of a discretionary "decision or action' over which the federal courts have been

stripped of jurisdiction.  The courts, however, have consistently rejected the government's arguments, refusing to find that Congress intended such a sweeping elimination of judicial review.  *See* cases above-cited.  The Plaintiff entreats this Court to likewise find the weight of these authorities persuasive and deny the Defendants' motion to dismiss under 8 U.S.C. § 1252(a)(2)(B)(ii).

Were this Court to hold otherwise, it would surrender its vital judicial oversight role and deprive countless deserving adjustment of status applicants – like the Plaintiff – of their sole avenue of recourse.  The cautionary words of the U.S. District Court for the Southern District of New York are particularly apt:

> Although there is no statutory or regulatory deadline by which the CIS *must* adjudicate an application, at some point, defendants' failure to take any action runs afoul of [the APA].  Were it otherwise, the CIS could hold adjustment applications in abeyance for decades without providing any reasoned basis for doing so.  Such an outcome defies logic – the CIS simply does no possess unfettered discretion to relegate aliens to a state of "limbo," leaving them to languish there indefinitely.

*Kim,* 340 F. Supp. 2d at 393.  *See also, Aslam v. Mukasey*, 2007 WL 220708, at *4-5.  The U.S. Court of Appeals for the third Circuit has also cautioned against blurring the distinction between discretionary and non-discretionary agency determinations, in order to avoid an overly broad curtailment of the courts' jurisdiction.  In *Pinho v. Gonzales,* 432 F.3d 193, 203 (3d Cir. 2005), the court explained:

> We must also ask whether the action at issue here was discretionary.  It is important to distinguish carefully between a denial of an application to adjust status, and a determination that an immigrant is legally ineligible for adjustment of status.  *This distinction is central to the question of subject matter jurisdiction, and is easy to elude.*

*Pinho,* 432 F.3d at 203 (emphasis added).  Warning against such broad assertions of jurisdiction-stripping effect as have been propounded by the Defendants, the Third Circuit declared that

> such distinctions are crucial to administrative law generally; the
> framework of judicial review of agency action that has evolved over the
> past half-century is grounded in a sharp distinction between decisions
> committed to agency discretion, and decisions, whether "ministerial" or
> "purely legal," governed directly by the applicable statute or regulation.

*Id.; see also Sepulveda*, 407 F.3d at 63 ("[Section] 1252(a)(2)(B) does not bar judicial review of

nondiscretionary, or purely legal, decisions…").  In the case at bar, there has been, to date, no

"actual exercise of discretion" by the Secretary of Homeland Security on the Plaintiffs' I-130

petition for alien relative and application for adjustment, but only an unreasonable failure to

adjudicate those petition/application.  Consequently, this Court's jurisdiction endures.

Finally, the Defendants insist upon a broad reading of the jurisdiction-stripping language

in § 1252(a)(2)(B)(ii), arguing that the agencies require wide discretion to delay their

adjudication while conducting all necessary background checks, in order to prevent granting

benefits to aliens who are ineligible due to criminal history, immigration fraud, or threat to

national security.  However, well-established principles of statutory construction support a

narrower interpretation of the statute.  *See, e.g., Obioha v. Gonzales,* 431 F.3d 400, 405 (4th Cir.

2005); *Liu v. Novak*, 509 F.Supp.2d at 7.  First, there must be a showing of "'clear and

convincing evidence' of a contrary legislative intent" to restrict access to judicial review.  *Bd. of

Governors of the Fed. Reserve Sys v. MCorp Fin., Inc.,* 502 U.S. 32, 44 (1991) (quoting *Abbott

Labs v. Gardner,* 387 U.S. 136, 141 (1967)).  Second, there is a "strong presumption in favor of

judicial review of administrative action," or, as in this case, administrative *in*action.  *INS v. St.

Cyr,* 533 U.S. 289, 298 (2001).  Third, courts construe ambiguities in deportation statutes in

favor of the alien.  *INS v. Cardoza-Fonseca,* 480 U.S. 421, 449 (1987); *see also Obioha*, 431

F.3d at 405 (applying these principles to 8 U.S.C. § 1252(a)(2)(B)(i)); *Iddir v. INS*, 301 F.3d 492,

496-97 (7th Cir. 2002) (same).  Because the language of 8 U.S.C. § 1252(a)(2)(B)(ii) is "equally

susceptible to a more narrow interpretation," barring review only of a decision to either grant or deny an adjustment application, but not of a decision to withhold adjudication altogether, "these principles guide that the narrower reading is appropriate." *Obioha*, 431 F.3d at 405.

In sum, as the Plaintiffs' complaint does not seek review of a particular action or decision by the Secretary of the DHS, but seeks simply to compel the completion of necessary processing and the adjudication of an unreasonably delayed application for adjustment of status, the Court is not divested of its right to review by the jurisdiction-stripping provisions of 8 U.S.C. § 1252(a)(2)(B)(ii).

## V.  MANDAMUS JURISDICTION UNDER 28 U.S.C. § 1361 AND THE APA

The Defendants argue that the Plaintiff's complaint should be dismissed because he lacks a clear right to immediate adjudication, and Defendant has no clear mandatory or ministerial obligation to adjudicate the application within a particular time frame.  The Defendants argue that the Plaintiff's allegations of unreasonable delay in the adjudication of his adjustment of status application are unreviewable under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555(b), 702, because (1) such adjudications are "expressly committed to agency discretion"; (2) without any statutory timeframe for completing adjudications, "this Court would have to create a temporal standard out of whole cloth"; and (3) the Plaintiff's complaint is "devoid of factual allegations that demonstrate unreasonable delay."  On each count, the Defendants' arguments are both unavailing and contrary to the overwhelming weight of authority. Because the Plaintiffs seek only to compel the Defendants to complete necessary processing and adjudicate an application which has been unreasonably delayed, this Court has original jurisdiction under the mandamus statute, 28 U.S.C. § 1361 and the APA.  Contrary to the

Defendants' claims, the Plaintiffs have established that they have a clear right to the relief requested, and that the agencies have a clear duty to act.

Adjudication of the Plaintiffs' I-130 petition and adjustment application, including completion of all necessary background checks, is purely ministerial, non-discretionary act which the Defendants are under obligation to perform in a timely manner. *See* 8 U.S.C. § 1103; 8 C.F.R. §§ 1245.2(a)(5)(i), 1245.6. As one court has explained:

> The INA mandates no particular time frame in which the Secretary must complete his review of adjustment of status applications. Nevertheless, as an agency of the Executive Branch, the Department of Homeland Security is subject to the catchall time requirement of the APA (quoting 8 U.S.C. § 555(b).[…] Absent this timeliness requirement, the Secretary could defeat the clear intent of Congress simply by withholding performance of his statutory duty indefinitely. […] Accordingly, the Court concludes that CIS has a legal obligation to adjudicate Aslam's petition within a reasonable period of time.

> CIS asserts that it has processed Aslam's application expeditiously and blames the delay on the FBI's failure to complete the name check. This argument lacks merits. By requesting name checks on every adjustment of status application, CIS has effectively deputized the FBI to complete an important element of its adjudication. It cannot now disclaim its responsibilities due to delays in that agency. […] If a delay is unreasonable under the law, CIS must bear the consequences. To hold otherwise would allow an executive branch agency to frustrate a requirement of timely adjudication by farming out a portion of its review to a separate unaccountable agency in the federal bureaucracy.

*Aslam v. Mukasey*, 2007 WL 220708, at *5. Another court has ruled:

> The Defendants… have a nondiscretionary duty to process Liu's application; they cannot decide not to process an application. Such a decision would not be an exercise of discretion, but a refusal to perform assigned duties. This Court has jurisdiction to review whether the Defendants are refusing to act.

*Liu v. Chertoff,* Slip Copy, 2007 WL 1202961, at *3 (C.D. Ill. Apr. 23, 2007) (denying government's motion to dismiss plaintiff's mandamus suit and finding two-year delay in completing plaintiff's FBI name check to be "highly unusual"); *see also, e.g., Xia v. Gonzales,*

2008 U.S.Dist. LEXIS 3273, at *4-5; *Liu v. Novak,* 509 F.Supp.2d at 8 ("[T]he Court does have

jurisdiction over plaintiff's APA claim that defendants have unreasonably delayed adjudicating

his application"); *Xia v. Gonzales,* 2008 U.S.Dist. LEXIS 3273, at *5 ("Defendants do not

possess unfettered discretion to relegate to a state of limbo, leaving them to languish

indefinitely." (citations omitted); *Ma & Liu,* 2007 WL 1655188, at *4; *Pool,* 2007 WL 1613272,

at *2 ("[T]he obligation of the USCIS to process applications is not discretionary and is

reviewable by this Court."); *Ibrahim,* 2007 WL 1558521, at *5 ([T]he duty to adjudicate the

applications is discretionary and ministerial."); *Chen,* 2007 WL 1468789, at *4 ([T]his non-

discretionary duty to adjudicate an adjustment application supports a mandamus action.");

*Koren,* 2007 WL 1431948, at *7 ("Since CIS' obligation to *adjudicate* adjustment of status

applications is clearly prescribed, the failure to do so within a 'reasonable' period of time

triggers mandamus jurisdiction in federal court."); *Singh,* 470 F. Supp. 2d at 1067 ("[Petitioners

who applications for adjustment in status are properly before the INS…have a right, enforceable

through a writ of mandamus, to have the applications processed within a reasonable time.")

(internal citations omitted); *Aboushaban,* 2006 WL 3041086, at *2; *Zahani,* 2006 WL 2246211,

at *1; *Elkhatib,* 2005 WL 5226742, at *2 ("[A]dministrative agencies do not possess discretion

to avoid discharging the duties that Congress intended them to perform."); *Ma & Liu,* 2007 WL

1655188, at *4 ("[T]his Court agrees that jurisdiction is proper under the APA and 28 U.S.C. §

1331 to compel USCIS to adjudicate an application for adjustment to permanent status."); *Pool,*

2007 WL 1613272, at *2 (same); *Koren,* 2007 WL 1431948, at *6 (same); *Dmitriev,* 2007 WL

1319533, at *3 (finding that "the USCIS has a statutory duty to adjudicate I-485 applications

within a reasonable time" under the APA); *Huang,* 2007 WL 130255; at *3 (same); *Wu,* 2007

WL 1223858, at *2-3 ("This Court has jurisdiction to hear plaintiff's complaint under both the

write of mandamus and the APA."); *Song,* 2007 WL 1101283, at *4 (finding that jurisdiction

exists under the APA "because while the agency has discretion to determine the outcome of an

adjustment application, they do not have discretion concerning the timing of processing

applications"); *Duan,* 2007 WL 626116, at *4 ("I am persuaded by those courts that have found

the exercise of jurisdiction proper, and 'this court now joins the majority and holds that

jurisdiction is proper under the APA and 28 U.S.C. § 1331 to compel the INS to adjudicate an

application for adjustment of permanent status.'") (internal citations omitted); *Singh*, 470 F.

Supp. 2d at1072 ("[T]he Court concludes that, whether pursuant to mandamus or the APA, Mr.

Singh is entitled to the relief he seeks."); *Fu v. Reno*, Slip Copy, 2000 WL 1644490, at *6 (N.D.

Tex. Nov. 1, 2000) ("[T]he court has subject matter jurisdiction over this case pursuant to the

APA in conjunction with 28 U.S.C. § 1331.") *Yu,* 36 F. Supp. 2d at 932; *Agbemaple v. INS,* Slip

Copy, 1998 WL 292441, at *2 (N.D. Ill. May 18, 1998); *see also Gelfer,* 2007 WL 90382, at *3

("Relief under mandamus and the APA are virtually equivalent when a petitioner seeks to

compel an agency to act on a nondiscretionary duty."); *Kim v. Ashcroft,* 340 F. Supp. 2d at 386,

389, 393 ("Whether to *adjudicate* an adjustment application is not discretionary, but governed by

section 6 of the APA, requiring the CIS to take action on a matter presented to it "within a

reasonable time. […][A]lthough there is no statutory or regulatory deadline by which the CIS

*must* adjudicate an application, at some point, defendants' failure to take any action runs afoul of

section 555(b).  Where it otherwise, CIS could hold adjustment applications in abeyance for

decades without providing any reasoned basis for doing so.  Such an outcome defies logic – the

CIS simply does not possess unfettered discretion to relegate aliens to a state of 'limbo,' leaving

them to languish there indefinitely.  *This result is explicitly foreclosed by the APA")* (emphasis

added).  In the case at bar, the Plaintiffs have complied fully with all requirements imposed on

them.  In response, the Defendants have engaged in unreasonable inaction and delay, failing to

adjudicate their petition/application.  Under these circumstances, the Court should find – like the

majority of federal courts to have addressed this issue – that the Defendants' failure to adjudicate

the Plaintiffs' petition/application is unreasonable and a breach of its ministerial non-

discretionary duty.  The specific facts of the Plaintiffs' case indicate that they are not simply

"waiting in line" to have their I-130/I-485 applications duly adjudicated, but apparently have

been "lost in bureaucratic shuffle," whereby Defendants even have conflicting information as to

where their petition/application are located or even adjudicated (*See* Dibbins Decl. stating that

the I-130 petition has been approved and the adjustment of status application is pending at the

Washington Field Office versus the USCIS website showing the I-130 petition not adjudicated

and pending with the adjustment application at the National Benefits Center in Missouri).

> Finally, the Defendants contend that

> It would be unconscionable and potentially risk the safety and security of
> the national for USCIS to grant United States lawful permanent resident
> status to anyone without first ensuring that the government's law
> enforcement databases do not contain verified derogatory information
> about the alien.  With lawful permanent resident status, a person who is a
> risk to the public or the nation's security could obtain work in sensitive
> industries and travel on transportation carriers more easily.

Dibbins Decl. Para. 5.  The agency's concern's, although perhaps legitimate with respect to

individuals who could reasonably be considered a "risk to the public or the nation's security,"

clearly do not apply to the Plaintiffs.  Mr. Asfour is a computer engineer employed as a

consultant.  He has been married to a United States citizen since September, 2005, has been

steadily employed and always maintained lawful immigration status, has always paid his taxes,

has never engaged in any illicit or criminal activities, and has never associated with any

subversive groups or individuals.  Furthermore, during the more than two years and four months

that his adjustment of status application has remained pending, Plaintiff Asfour has been granted permission to work, permission, to travel, and permission to reside in the United States by the U.S. immigration authorities. Were the Plaintiff truly perceived to be a "risk to the safety and security of the nation," surely the proper course would not be to simply indefinitely delay his adjustment of status application while consistently affording him the right to live, work, and travel in his country.

The unreasonable delay in this case cannot fairly be attributed to anything other than impermissible bureaucratic inaction. Remarkably, notwithstanding the two-year and four-month delay in adjudication, the Defendants have revealed that no request to expedite the FBI name check process has been requested in this case, because "[e]xpedite requests require additional fees to be paid to the FBI by USCIS and USCIS is limited by the FBI as to the number of requests that can be made." Dibbins Decl. Para. 8. This shockingly reveals perhaps the "real" motive behind the delay—to save a few dollars, but this excuse becomes more appalling in light of the substantial filing fee increase for adjustment of status from $390 to $1,010, effective July 30, 2007. Surely, these substantial fees warrant spending a "few more dollars" to expedite the case. Indeed, Plaintiffs would gladly pay this surcharge to expeditiously complete their case. Under these circumstances, the agency has failed to demonstrate a good faith effort to resolve administrative errors and adjudicate the Plaintiffs' petition/application within a reasonable timeframe, which clearly weights in favor of mandamus relief. *Cf. Liberty Fund v. Chao,* 394 F. Supp. 2d 105, 120 (D.D.C. 2005) (holding that "the good faith of the agency in addressing the delay weights against mandamus").

Judge Sullivan in *Liu v. Novak*, 509 F.Supp.2d 1 (D.D.C. Aug. 30, 2007), in contrast to the *Orlov* decision quoted by Defendants, fully analyzed the issue of reasonableness, relying on

the holding of *Telecommunications Research & Action Center("TRAC") v. FCC*, 750 F.2d 70

(D.C. Cir. 1984) to identify the factors relevant in determining whether agency delay is

unreasonable:

> (1) the time agencies take to make decisions must be governed by a "rule of
> reason;" (2) where Congress has provided a timetable or other indication of the
> speed with which it expects the agency to proceed in the enabling statute, that
> statutory scheme may supply content for this rule of reason; (3) delays that might
> be reasonable in the sphere of economic regulation are less tolerable when human
> health and welfare are at stake; (4) the court should consider the effect of
> expediting delayed action on agency activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of the interests
> prejudiced by delay; and (6) the court need not find "any impropriety lurking
> behind agency lassitude in order to hold that agency action is 'unreasonably
> delayed.'"

*Liu v. Novak,* 509 F. Supp.2d at 8*, citing Telecommunications Research & Action Center v. FCC*,

750 F.2d at 80 (citations omitted).  In *Liu,* Judge Sullivan ruled that with regard to the first

TRAC factor, a four-year delay for a name check process described by the Defendants "as one

where data is primarily retrieved from an electronic database, and only occasionally from paper

records," to be unreasonable.  *Id.* at 8.  The two years and four months delay in Plaintiffs' case

for the same reason is equally unreasonable.  Judge Sullivan at footnote 4 noted that "Congress

has not provided a timetable for this action, so the second TRAC factor is inapplicable."  *Id.*

Judge Sullivan in *Liu* has further ruled that—

> With regard to the third and fifth TRAC factors, […] [t]he inability to obtain
> permanent resident status affects a wide range of important rights."  [citing *Singh
> v. Still*, 470 F.Supp.2d 1064, 1070 (N.D.Cal.2007)].  For example, the delay
> prejudices plaintiff's ability to petition to immigrate close family members and
> adversely impacts his ability to seek United States citizenship.  *See id.*  Thus,
> these factors weigh in favor of finding the delay unreasonable.

*Liu v. Novak,* 509 F.Supp.2d at 9.  The delay in adjudicating his application for adjustment of

status to permanent resident prejudices Plaintiff Asfour by postponing his ability to seek future

naturalization, and thus, of the right to vote in elections, and by depriving him of the current

ability to petition close family members if he were a permanent resident.  Regarding the fifth

TRAC factor, like the plaintiff in *Liu*, Plaintiff Asfour is not the subject of any active

investigation.  Indeed, none of the declarations submitted by Defendants states that Plaintiff is

under any type of ongoing investigation, or that any check has triggered the need for further

investigation.[2]  Judge Bates in *Orlov*, ---F.Supp.2d.---, 2007 WL 4293490 at *5 notes that-

> [i]f an investigation has been undertaken and has not been completed within one
> year of its inception, the district director shall review the matter and determine
> whether adjudication of the petition or application should be held in abeyance for
> six months or until the investigation is completed, whichever comes sooner.  If,
> after six months of the district director's determination, the investigation has not
> been completed, the matter shall be review again by the district director and, if
> he/she concludes that more time is needed to complete the investigation,
> adjudication may be held in abeyance for up to another six months.  If the
> investigation is not completed at the end of that time, the matter shall be referred
> to the regional commissioner, who may authorize that adjudication be held in
> abeyance for another six months.  Thereafter, if the Associate Commissioner,
> Examinations, with the concurrence of the Associate Commissioner,
> Enforcement, determines it is necessary to continue to withhold adjudication
> pending completion of the investigation, he/she shall review that determination
> every six months.

In sum, the Defendants have not shown, and the record does not show, that

Plaintiff Asfour is the subject of an investigation, which could therefore justify the delay

for the adjudication of her adjustment application.  To the contrary, Defendants have

been unable to give any rational explanation as to why Plaintiffs' case has been unduly

delayed after an initial screening, while other such cases under review have been quickly

concluded.  Judge Pechman correctly concludes-

> This Court is not interested in adjusting the legal status of an individual when
> there is a valid reason for the denial of that adjustment.  However, Defendants
> have offered no reason why Mr. Xia's application should not be adjudicated.

---

[2] "Specifically, USCIS is still waiting for the results of the original name check from September 30, 2005…"
Dibbins Decl. at par. 11.

Xia, Slip Copy, 2008 WL 168672, at 3.  Similarly, Defendants have offered no reason

why Plaintiffs' petition/application for adjustment of status should not be adjudicated.

Accordingly, the Plaintiffs urge this Court to find, notwithstanding the Defendants'

protestations, that the facts of this case clearly support his claim of unreasonable agency delay.

The Court should order the Defendants and those acting under them to perform their non-

discretionary legal duty and adjudicate the Plaintiffs' meritorious I-130 petition for alien relative

and adjustment of status application without further delay.

## VI.    TRANSFER TO THE EASTERN DISTRICT OF VIRGINIA IS NOT WARRANTED

This Court should deny the Defendants' motion to transfer venue.  Venue should properly

remain in the District of Columbia under 28 U.S.C. § 1391(e) and the Defendants have not

demonstrated that a transfer to the U.S. District Court for the Eastern District of Virginia is

warranted under 28 U.S.C. § 1404(a).  In particular, the Defendants' assertion that the "USCIS's

Washington Field Office is responsible for adjudicating Plaintiffs' adjustment of status

application" and referring to the Dibbins Decl. for the assertion that the Plaintiff's application for

adjustment of status is pending in that office (Def. Memo. at 28, 30) , is belied by the USCIS

website which as of January 30, 2008 revealed that the Plaintiff's application for adjustment of

status is currently at the USCIS National Benefits Center.  *See* Exhibit 2.  The National Benefits

Center is located in Lee's Summit, Missouri.

Furthermore, the Defendants' assertion that the only nexus between the D.C. judicial

district and this case is the fact that "some of the Defendants are high government officials who

reside in the District of Columbia" plainly misses the point for venue in the District of Columbia.

*See* Def. Memo. at 28.  The source of the complained delay in adjudicating the Plaintiff's

application for adjustment of status is solely due to the required name check that has not been

completed by Defendants. *See* Dibbins Decl. at § 11. Decisions governing the imposition and processing of security and background checks on applicants for certain immigration benefits, including adjustment of status, occur at the highest levels of CIS and DHS—namely, at CIS and DHS Headquarters in Washington D.C. As the Defendants have acknowledged, the Plaintiff's adjustment application remains unadjudicated by CIS because required FBI name check has not yet been completed. *See* Dibbins Decl. at § 11. Although the Defendants argue that the Washington Field Office is responsible for issuing the final adjudication of the Plaintiff's application for adjustment of status, they offer no evidence that the required background checks are actually being carried out by that office. To the contrary, Defendants acknowledge that all the Washington Field Office officials can do is "wait[…] for the results of the original name check from September 30, 2005 to be submitted by the FBI to USCIS for review." Dibbins Decl. at § 11. In sum, the basis for Plaintiff's complaint stems from the delays by the FBI in processing name checks.

<u>**Standard of Review**</u>

A civil action brought against a U.S. Government defendant is governed by the venue provision of 28 U.S.C. § 1391(e). The plaintiff's choice of forum is entitled to "great deference" and is a "paramount consideration" in deciding whether to grant a defendant's transfer request. *Shawnee Tribe v. United States*, 298 F.Supp. 2d 21, 24 (D.D.C. 2002); *see also Southern Utah Wilderness Alliance v. Norton*, 315 F.Supp.2d 82, 86 (D.D.C. 2005) ("Courts give considerable deference to the plaintiff's choice of forum.") In deciding whether a transfer is appropriate, "unless contradicted by any evidentiary showing, the court accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor."

*Jyachosky v. Winter*, 2006 WL 1805607, at *1 (D.D.C. Jun. 29, 2006) (citations and internal

quotations omitted). Notwithstanding, even when the plaintiff's choice of venue is found to be

proper under 28 U.S.C. § 1391(e), "[f]or the convenience of parties and witnesses, in the interest

of justice, a district court may transfer any civil action to any other district or division where it

might have been brought." 28 U.S.C. § 1404(a). In the case at bar, the Defendants seek a

transfer pursuant to 28 U.S.C. § 1404(a) to the U.S. District Court for the Eastern District of

Virginia, where, they contend, venue is more appropriate. Def. Memo. at 29. However, Virginia

has no connection to the DHS case file which is pending, according to Defendant USCIS'

website, at the National Benefits Centers in the State of Missouri.

As a moving party, the Defendants bear the "heavy burden" of demonstrating that a

transfer to the Eastern District of Virginia is proper. *See Pain v. United Tech. Corp.*, 637 F.2d

775, 784 (D.D.C. 1980); *Shenandoah Assoc. Ltd. Partnership v. Tirana*, 182 F.Supp.2d 14, 25

(D.D.C. 2001); *Greater Yellowstone Coalition v. Bosworth*, 180 F.Supp.2d 124, 127 (D.D.C.

2001). The Court is afforded broad discretion to decide whether transfer is warranted,

employing "an individualized, case-by-case consideration of convenience and fairness" and

honoring a plaintiff's venue selection unless "the balance of private and public interests weighs

in favor of transfer." *Abusadeh v. Chertoff*, Slip Copy, 2007 WL 2111036, at *3-4 (D.D.C. July

23, 2007) (quoting *van Dusen v. Barrack*, 376 U.S.612, 622 (1964)); *see also SEC v. Savoy

Indus, Inc.*, 587 F.3d 1149, 1154 (D.C.Cir. 1978). Such deference is lessened, however, if the

plaintiff's forum choice "lacks meaningful ties to the controversy and [has] no particular interest

in the parties or subject matter. *Islamic Republic of Iran v. Boeing Co.*, 477 F.Supp. 142, 144

(D.D.C. 1979); *see also Southern Utah Wilderness Alliance*, 315 F.Supp.2d at 86. Moreover, the

Defendants' burden for a motion to transfer decreases if it is shown that the Plaintiff's choice of

venue "has no *meaningful nexus* to the controversy and the parties." *Greater Yellowstone,* 180 F.Supp.2d at 128 (emphasis added); *Wilderness Society v. Babbitt*, 104 F.Supp.2d 10, 12 (D.D.C. 2000).

Under 18 U.S.C. § 1404(a), the Defendants, who bear the burden of establishing that a transfer is appropriate, must make two showings to justify their desired change of venue. *See Sierra Club v. Flowers*, 276 F.Supp.2d 62, 65 (D.D.C. 2003); *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F.Supp. 13, 16 (D.D.C. 1996). First, the Defendants must demonstrate that the Plaintiff could have brought this action in the proposed transferee district. *Sierra Club*, 276 F.Supp.2d at 65*; see also Van Dusen*, 376 U.S. at 622. Second, the Defendants must establish that considerations of convenience and the interest of justice weigh in favor of a transfer to the Eastern District of Virginia. *Southern Utah Wilderness Alliance*, 315 F.Supp.2d at 86; *Trout Unlimited*, 944 F.Supp. at 16. As to the second factor, the Court must weigh a number of case-specific private-interest and public-interest factors and "transfer a case *only* if the balance of private and public interests weighs in favor of transfer." *Abusadeh*, 2007 WL 2111036, at *4 (emphasis added). The private-interest factors include the following: (1) the Plaintiff's choice of forum; (2) the Defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease and access to sources of proof. *Sierra Club*, 276 F.Supp.2d at 65; *Trout Unlimited*, 944 F.Supp. at 16. The Court also evaluates the following public-interest considerations: (1) the degree to which the courts in both venues are familiar with the governing laws; (2) the relative congestions to the calendars of the transferee and transferor courts; and (3) the local interest in deciding local controversies at home. *See Abusadeh*, 2007 WL 2111036, at *4; *see also Jumara v. State Farm*

*Ins. Co.*, 55 F.3d 873, 879-80 (3[d] Cir. 1995); *Southern Utah Wilderness Alliance*, 315 F.Supp.2d at 86.

### A. Private-Interest Consideration Weigh Against a Transfer

#### 1. The Plaintiff's choice of forum is entitled to deference.

In evaluating the Defendants' motion, this Court must first determine whether venue is proper for the Plaintiffs' claims, before turning to the threshold question whether this action "might have been brought" in the Eastern District of Virginia.  *Van Dusen*, 376 U.S. at 616; *Abusadeh*, 2007 WL 2111036, at *3.  At the outset, venue properly lies in the District of Columbia because all three named Defendants reside in this District and national policy concerning adjudication of applications for immigration benefits, such as adjustment of status to lawful permanent resident and imposition of required background and security checks, is formulated by DHS, CIS and FBI Headquarters in Washington D.C.  Accordingly, Plaintiff's choice of forum merits deference.  *See Shawnee Tribe*, 298 F.Supp.2d at 24 ([A] plaintiff's choice of forum is afforded great deference, and is a 'paramount consideration' in any determination of a motion to transfer.") (quoting *Sheraton Operating Corp. v. Just Corporate Travel*, 984 F.Supp.22, 25 (D.D.C. 1997)); *see also Southern Utah Wilderness Alliance*, 315 F.Supp.2d at 286 ("The moving party '[b]ears a heavy burden of establishing that plaintiff's choice of forum is inappropriate.'") (quoting *Pain v. United Tech. Corp.,* 637 F.2d 775, 784 (D.D. Cir. 1980)).

#### 2. The Defendants' choice of forum is not entitled to deference.

The Defendants contend that the Plaintiffs' choice of forum deserves little deference because they do not reside in the District of Columbia.  The Defendants misrepresent to this Court that Plaintiff Asfour's application for adjustment of status is pending adjudication at the

Washington Field Office in Fairfax, Virginia. *See* Def. Memo. at 28, 30 and Dibbins Decl.

Based upon that misrepresentation, Defendants assert that "[t]he Eastern District of Virginia is a

district in which this case 'might have been brought.'" "USCIS's Washington Field Office is

responsible for adjudicating Plaintiff's adjustment of status application; therefore any delay in

the processing of the application concerns that office, which is located in Fairfax, Virginia."

Def. Memo. at 29. In fact, this case has no ties to the Washington Field Office in Virginia since

it is currently pending adjudication at the USCIS National Benefits Center in Missouri.

Furthermore, the Defendants' argument that this judicial district lacks meaningful ties to

the controversy is belied by the nature of the background check process itself, which has

forestalled adjudication of the Plaintiff's adjustment application. In her declaration, Ms. Dibbins

states that "USCIS is still waiting for the results of the original name check from September 30,

2005." Dibbins Decl. at § 11. According to the Defendants, therefore, CIS may not even

proceed with the adjudication of the Plaintiff's adjustment application until his name check is

completed. The processing of requisite background and security checks, which is the admitted

source of delay in adjudicating the Plaintiff's application for adjustment, takes place *outside* of

the Washington Field Office in Virginia and of the National Benefits Center in Missouri.

Contrary to the Defendants' allegations, the private interests in this case do not favor a transfer to

the Eastern District of Virginia because the primary issue in this case concerns decisions on

routine background and security checks made outside the realm of the Fairfax office.

Plaintiff's case is clearly distinguishable from the case decisions within this district cited

by Defendants where venue was transferred. In *Poliakova*, No. 07-1210 (D.D.C. December 17,

2007), cited by Defendants, Poliakova's application for adjustment of status was pending with

the CIS Miami field office, where she was interviewed regarding her application for adjustment

of status.  Poliakova resided in Southern Florida, and Poliakova's counsel admitted that "Plaintiff does not dispute that this is an action 'which might have been brought' in the Southern District of Florida, as she herself resides there."  Unlike Poliakova, Plaintiff Asfour's case is not pending before the Washington Field Office in Virginia, but at the National Benefits Center in Missouri. In the case of *Fayyaz v. Chertoff*, No. 06-02016 (October 25, 2007), decided by Your Honor, Plaintiff resided in Houston, Texas, and the USCIS Houston local field office was responsible to adjudicate Fayyaz' application for adjustment of status pending before that office.  Again, Plaintiff Asfour's application for adjustment of status is not pending before the Eastern District of Virginia, as misrepresented by Defendants, but in Missouri before the National Benefits Center of USCIS.  This clearly shows a lack of ties between Plaintiff and Virginia where Defendants seek venue.

Defendants also cite *Abusadeh v. Chertoff*, 2007 WL 2111036 (D.D.C. July 23, 2007). Abusadeh did not apply for an I-485 application for adjustment of status, but for naturalization. This fact is crucial, because Abusadeh resided in Texas; the Texas District Office was the place where his interview and examination for naturalization took place, and where the federal court action must occur as mandated by statute (see 8 U.S.C. § 1427(a), which requires an applicant for naturalization to have resided within the State in the United States in which the applicant files the application for at least three months).  The Texas District Office was also the local office of USCIS where Abusadeh could inquire in person about the status of his application. No such statutory residency requirements and ties exist in the context of venue to review an application for adjustment of status.  Indeed, the local Washington field office in Virginia, or district office, has no current jurisdiction over Plaintiff Asfour's application for adjustment of status since that application is located at the National Benefits Center in Missouri.

The Defendants also unpersuasively refer to the case of *Cameron v. Thornburgh*, 983 F.2d 253 (D.C. Cir. 1993), to justify a transfer to Virginia. As the *Cameron* Court explained, "this was an unusual case to bring in the District of Columbia. As far as it appears from the appellant's original complaint and his brief on appeal, all acts and omissions related to his complaint occurred in Indiana or at the prison medical center in Springfield, Missouri. Similarly, the two appellees most directly connected to Cameron's case [...] were in Indiana and Kansas, respectively." Id. at 256. Furthermore, the *Cameron* Court ruled that venue under 28 U.S.C. § 1391(e) was not proper because it did not apply to *Bivens* actions, such as the one of Cameron's. *Id.* However, the *Cameron* Court pointed out that "[s]ection 1391(e) makes venue proper for a suit against government officials in any district in which one defendant resides. Because Attorney General Thornburgh lived in the District of Columbia, the court correctly concluded that venue would have been proper in this district *for the injunctive claim.*" *Id.* at 257, FN2. This is exactly the case for Plaintiff Asfour: he is seeking injunctive relief to compel Defendants to adjudicate his name check and application for adjustment of status; he is suing Defendants who are government officials in their official capacity; and all three Defendants reside in the District of Columbia. Thus, venue is clearly proper within the District of Columbia.

### 3. The Plaintiff's claim arose in this District.

Next, the Court looks to whether the action arose somewhere outside the Plaintiff's chosen forum. *E.g., Sierra Club*, 276 F.Supp.2d at 67. In *Abusadeh v. Chertoff*, relied on by Defendants, the Court granted the Defendants' transfer request, in part, because Abusadeh had previously filed a district court action in another jurisdiction—presenting the same factual allegations but different legal theories—and "only brought suit here after being *denied* the relief he sought in the Southern District of Texas." *Abusadeh*, 2007 WL 2111036, at *5 (emphasis

added).  No such facts exist here; to the contrary, Plaintiff brought his original action in this Court.  For this reason as well, the Court should defer to the Plaintiff's choice of forum.

### 4. The convenience of the parties does not favor a transfer.

The convenience of the parties carries no weight where the "action involves an administrative review that the court is likely to determine on the papers," as in this case.  *Sierra Club*, 276 F.Supp.2d at 69.  Furthermore, the dispositive issue is the delay owing to uncompleted security and background checks.  Processing of those checks occurs outside of the Eastern District of Virginia.  As the Defendants conceded, the USCIS field office cannot proceed with the adjudication of this matter until the security checks have been completed.  Finally, Plaintiff's case is not pending before the Washington Field Office in Virginia, unlike all the other Plaintiffs whose case was pending before the USCIS local field office where the Court had decided to transfer the case to those other jurisdictions.

The action before this Court pertains solely to the Defendants' unreasonable delay.  *See, Liu v. Novak*, Slip Opinion, 2007 WL 2460425, at *7 (D.D.C. Aug. 30, 2007) (finding that "28 U.S.C. § 1331, in combination with the APA, vests the court with jurisdiction to compel agency action that is unreasonably delayed or withheld.");  *see also Xia v. Gonzales*, 2008 U.S.Dist. LEXIS 3273 (W.D.Was. Jan. 15, 2008); *Aslam v. Mukasey*, 2008 WL 220708 (E.D.Va. Jan. 25, 2008).  Accordingly, the Defendants have failed to identify any local interest in resolving this case in Virginia, as the delay is the result of FBI's failure to complete background checks within a reasonable time, checks which occur outside of the state of Texas.  *Cf., e.g., Rosales v. United States,* 477 F.Supp.2d 213, 216 (D.D.C. 2007) (granting transfer request because "this dispute involves individuals, real property, and native American cultural items that are exclusively

located in the Southern District of California.")  Moreover, all of the Defendants have their office in the District of Columbia.

### 5. The convenience of the witnesses does not favor a transfer.

Plaintiff resides in Arlington, Virginia, which borders Washington D.C.  Plaintiff anticipates that his complaint in the nature of mandamus will be decided solely on the written pleadings, and should the Court deem necessary, argument by counsel, without the need for witnesses or testimony.  In addition, Plaintiff's counsel is located in Washington D.C., as is Defendants' counsel.  If discovery is necessary, it would be directed mostly at Defendant FBI located in Washington D.C.  Therefore, there is no basis for the Defendants' claim that it is more convenient to litigate this case in the Eastern District of Virginia.  *cf. Joyner v. District of Columbia*, 267 F.Supp.2d 15, 21 (D.D.C. 2003) (finding that "interest of justice and convenience of the parties and witnesses" justify transfer to district "where the prison of Frank Joyner's murder is located, where the records and other physical evidence will be found, and where it is likely that most of the potential witnesses are located.")

### 6. Ease of access to sources of proof does not favor a transfer.

Finally, the ease of access to sources of proof is of little significance, where the Court will likely decide this case on the administrative record.  *See Air Line Pilots Ass'n v. Eastern Air Lines*, 672 F. Supp. 525, 527 (D.D.C. 1987) (noting that since the record had to be shipped to the parties' District-based counsel, it was not "a significant greater hardship" to send a copy to the courthouse as well).

### B. Public-Interest Considerations Weigh Against a Transfer

### 1.  Transferee's familiarity with governing laws.

This case involves interpretation of federal statutes.  Plaintiff's complaint seeks this

Court's intervention under the mandamus and federal question statutes and the APA, owing to Defendants' unreasonable delay in adjudicating her application for adjustment of status. *See Liu v. Novak*, Slip Opinion, 2007 WL 2460425, at *7 (D.D.C. Aug. 30, 2007) (finding that "28 U.S.C. § 1331, in combination with the APA, vests the court with jurisdiction to compel agency action that is unreasonably delayed or withheld."); *see also Xia v. Gonzales*, 2008 U.S.Dist. LEXIS 3273 (W.D.Was. Jan. 15, 2008); *Aslam v. Mukasey*, 2008 WL 220708 (E.D.Va. Jan. 25, 2008). In other cases where the District Court of Columbia has found transfer to be warranted, the suits involved a localized dispute with little national significance and the alternative venue was more familiar with governing laws. *See, e.g., Southern Utah Wilderness Alliance,* 315 F.Supp.2d at 88-89; *Sierra Club*, 276 F. Supp.2d at 71; *Trout Unlimited*, 944 F.Supp. at 19. By contrast, Plaintiff's case does not involve any issue of state or local law, and, instead, touches upon an issue of national significance—delays in the processing of applications of immigration benefits as a result of security background checks. Therefore, because this action pertains exclusively to federal laws that have a nationwide application, there is no advantage to have the case transferred to a district court in Texas.

2. ***Relative congestion of Courts' respective calendars**.*

The evidence that Defendants have offered show that the judicial caseload is much higher in the Eastern District of Virginia than in the District of Columbia. Consequently, this factor likewise does not alter the balance in favor of a transfer.

3. ***Local interest in deciding local controversies.**

Plaintiff's application for adjustment was originally filed with the National Benefits Center. It was subsequently transferred to the Washington Field Office where Plaintiffs were interviewed on April 27, 2006. It has since then been returned to the National Benefits Center in

Missouri, where it is currently pending adjudication.  If tomorrow Defendants so choose, they can transfer Plaintiff's case to another Service Center or local field office.  This is not a case, therefore, where local interest or local impact tips the public-interest balance in favor of a transfer.  *See Greater Yellowstone*, 180 F.Supp.2d at 129-30; *Wilderness Soc'y*, 104 F.Supp.2d at 13-14; *cf, e.g., Shawnee Tribe*, 298 F.Supp.2d at 27 (finding a compelling "local interest" favoring transfer where resolving the controversy at issue "would require not only knowledge and experience in interpreting Native American Indian treaties, but examination of local property records and deeds and other documents").  This Court has cautioned that a transfer is disfavored if the possibility exists that defendants are forum-shopping.  *See Greater Yellowstone,* 180 F.Supp.2d at 129.

**C. Transfer of this Case Will Result in Further Unreasonable Delay**.

Most significantly, a grant of Defendants' motion to transfer would unavoidably lead to further and unnecessary delay.  The prospect of such additional delay weighs heavily against an approval of Defendants' motion to transfer, in light of the fact that Plaintiff has already waited more than two years and four months for his application for adjustment of status to be adjudicated.  *Cf. Trout Unlimited*, 944 F. Supp. At 19 (granting government's transfer request where "[i]t is not evident that a transfer to the Northern District of Colorado will lead to unnecessary delay.")  In *Abusadeh v. Chertoff*, the transfer to the Southern District of Texas further delayed the case for an additional five months.  *See Abusadeh v. Chertoff*, Slip Copy, 2007 WL 4591757 (S.D.Tex. Dec. 27, 2007) (the case was ordered to be transferred by the D.C. Court on July 23, 2007, and was decided in Texas more than five months later on December 27, 2007, a substantial delay).  In *Fayyaz v. Chertoff,* No. 06-2016 (D.D.C. Oct. 25, 2007), this Court ordered the transfer to the Southern District of Texas on October 25, 2007.  The case was

actually transferred on January 14, 2008, and remains currently pending.  Initial conference in

that case has been scheduled for May 30, 2008, in an additional four months.  Therefore, transfer

has delayed that case for seven months and counting.  *See* Exhibit 3.

### VII.  CONCLUSION

Based on the foregoing, the Plaintiffs respectfully oppose the Defendant's motion to

dismiss and transfer and urge the Court to deny the motion in its entirety.  Furthermore, the

Plaintiff urge the Court to order CIS to take all appropriate steps to adjudicate the Plaintiffs'

petition/application within 30 days, including expediting Plaintiff Asfour's background checks

with the FBI.  *See Song,* 2007 WL 1101283, at *5 (denying government motion to dismiss and

remanding to CIS "to complete adjudication of plaintiffs applications within thirty days");

*Haidari,* 2006 WL 3544922, at *6 (denying motion to dismiss and remanding to CIS to complete

processing of plaintiffs adjustment applications within 30 days); *Xia v. Gonzales*, 2008 U.S.Dist.

LEXIS 3273, at *9 (ordering Defendants to complete the processing of Plaintiff's application

within sixty days); *Aslam v. Mukasey,* 2007 WL 220708, at *9 (ordering CIS to direct the FBI to

expedite its processing of Aslam's name check); *Liu v. Novak*, 509 F.Supp.2d 10 (denying

Defendants' motion to dismiss and directing Defendants to complete the adjudication of

plaintiff's application for adjustment of status by no later than November 30, 2007).

January 31, 2008                          Respectfully submitted,


_____/s/_____
Thomas A. Elliot, Esquire
D.C. Bar No. 259713
Elliot & Mayock
1666 Connecticut Avenue, N.W., 5th Floor
Washington, D.C. 20009
202-429-1725

41

Attorney for Plaintiff

# Case Status Search

Receipt Number:    msc0536123245

Application Type:    I130, IMMIGRANT PETITION FOR RELATIVE, FIANCE(E), OR ORPHAN

Current Status:
Case received and pending.

On September 28, 2005, we received this I130 IMMIGRANT PETITION FOR RELATIVE, FIANCE(E), OR ORPHAN, and mailed you a notice describing how we will process your case. Please follow any instructions on this notice. We will notify you by mail when we make a decision or if we need something from you. If you move while this case is pending, call customer service. We process cases in the order we receive them. You can use our processing dates to estimate when yours will be done. This case is at our NATIONAL BENEFITS CENTER location. Follow the link below to check processing dates. You can also receive automatic e-mail updates as we process your case. Just follow the link below to register.

_____

If you have a question about case status information provided via this site, or if you have not received a decision from USCIS within the current processing time listed, please contact the USCIS Customer Service at (800) 375   5283 or 1-800-767-1833 (TTY).

# Case Status Search

Receipt Number:    msc0536123243

Application Type:    I485, APPLICATION TO REGISTER PERMANENT RESIDENCE OR TO
ADJUST STATUS

Current Status:
Response to request for evidence received, and case processing has resumed.

On October 26, 2005, we received your response to our request for evidence. We will notify you by mail when we make a decision or if we need something from you. If you move while this case is pending, call customer service. You should expect to receive a written decision or written update within 60 days of the date we received your response unless fingerprint processing or an interview are standard parts of case processing and have not yet been completed, in which case you can use our processing dates to estimate when this case will be done. This case is at our NATIONAL BENEFITS CENTER location. Follow the link below to check processing dates. You can also receive automatic e-mail updates as we process your case. Just follow the link below to register.

_____

If you have a question about case status information provided via this site, or if you have not received a decision from USCIS within the current processing time listed, please contact the USCIS Customer Service at (800) 375   5283 or 1-800-767-1833 (TTY).

# Westlaw.

TO ORDER COPIES OF ANY DOCUMENTS LISTED BELOW, CALL WESTLAW COURTEXPRESS
1-877-DOC-RETR (1-877-362-7387) (Additional Charges Apply).

**This docket is current through 20080129**

| | |
|---|---|
| **Court:** | U.S. DISTRICT COURT SOUTHERN DISTRICT OF TEXAS (HOUSTON) |
| **Case Title:** | FAYYAZ ET AL v. CHERTOFF ET AL |
| **Case:** | 4:08-CV-00210 |
| **Judge:** | JUDGE LEE H ROSENTHAL |
| **Date Filed:** | 20080114 |
| **Other Dockets:** | DISTRICT OF COLUMBIA, 1:06CV02016 |

## CASE INFORMATION

| | |
|---|---|
| **Case Number:** | 4:08CV00210 |
| **Jury Demand:** | NONE |
| **Nature of Suit:** | OTHER STATUTES: OTHER STATUTORY ACTIONS (890) |
| **Jurisdiction:** | U.S. GOVERNMENT DEFENDANT |
| **Cause:** | 28 USC 1361 PETITION FOR WRIT OF MANDAMUS |

## PARTICIPANT INFORMATION

| | |
|---|---|
| **Plaintiff:** | MOHAMMAD FAYYAZ |
| **Attorney(s):** | JONATHAN S ROCHKIND |
| **Firm Name:** | SMITH HUDSON CARLUZZO & MCINTOSH, PC |
| **Attorney Address:** | 9403 GRANT AVE. |
| | MANASSAS, VA 20110 |
| **Attorney Phone:** | 713-361-0776 |
| | |
| **Attorney(s):** | AJAY CHOUDHARY |
| **Email Address:** | AJAY.CHOUDHARY@COANE.COM |
| **Firm Name:** | COANE & ASSOCIATES |
| **Attorney Address:** | 1900 W LOOP S, STE 820 |
| | HOUSTON, TX 77027-3206 |

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

| | |
|---|---|
| **Attorney Phone:** | 713-850-0066 |
| **Attorney Fax:** | 713-850-8528 |
| | |
| **Attorney(s):** | JAMES P MCCOLLOM, JR |
| **Email Address:** | JAMESM@COANE.COM |
| **Firm Name:** | COANE AND ASSOC |
| **Attorney Address:** | 1900 WEST LOOP SOUTH, STE 820 |
| | HOUSTON, TX 77027 |
| **Attorney Phone:** | 713-850-0066 |
| **Attorney Fax:** | 713-850-8528 |
| | |
| **Plaintiff:** | GIZELA FAYYAZ |
| **Attorney(s):** | JONATHAN S ROCHKIND |
| **Firm Name:** | SMITH HUDSON CARLUZZO & MCINTOSH, PC |
| **Attorney Address:** | 9403 GRANT AVE. |
| | MANASSAS, VA 20110 |
| **Attorney Phone:** | 713-361-0776 |
| | |
| **Attorney(s):** | AJAY CHOUDHARY |
| **Email Address:** | AJAY.CHOUDHARY@COANE.COM |
| **Firm Name:** | COANE & ASSOCIATES |
| **Attorney Address:** | 1900 W LOOP S, STE 820 |
| | HOUSTON, TX 77027-3206 |
| **Attorney Phone:** | 713-850-0066 |
| **Attorney Fax:** | 713-850-8528 |
| | |
| **Attorney(s):** | JAMES P MCCOLLOM, JR |
| **Email Address:** | JAMESM@COANE.COM |
| **Firm Name:** | COANE AND ASSOC |
| **Attorney Address:** | 1900 WEST LOOP SOUTH, STE 820 |
| | HOUSTON, TX 77027 |
| **Attorney Phone:** | 713-850-0066 |
| **Attorney Fax:** | 713-850-8528 |
| | |
| **Defendant:** | MICHAEL CHERTOFF SECRETARY, DEPARTMENT OF HOMELAND SECURITY |
| **Attorney(s):** | KAREN L. MELNIK |
| **Firm Name:** | U.S. ATTORNEY'S OFFICE |
| **Attorney Address:** | 555 FOURTH STREET, NW, ROOM E4112 |
| | WASHINGTON, DC 20530 |

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

| | |
|---|---|
| **Attorney Phone:** | 202-307-0338 |
| **Defendant:** | EMILIO GONZALEZ DIRECTOR, UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES |
| **Attorney(s):** | KAREN L. MELNIK |
| **Firm Name:** | U.S. ATTORNEY'S OFFICE |
| **Attorney Address:** | 555 FOURTH STREET, NW, ROOM E4112 |
| | WASHINGTON, DC 20530 |
| **Attorney Phone:** | 202-307-0338 |
| **Defendant:** | SHARON HUDSON DISTRICT DIRECTOR, UNITED STATES CITIZEN-SHIP AND IMMIGRATION SERVICES-HOUSTON |
| **Attorney(s):** | KAREN L. MELNIK |
| **Firm Name:** | U.S. ATTORNEY'S OFFICE |
| **Attorney Address:** | 555 FOURTH STREET, NW, ROOM E4112 |
| | WASHINGTON, DC 20530 |
| **Attorney Phone:** | 202-307-0338 |
| **Defendant:** | ROBERT MUELLER DIRECTOR, FEDERAL BUREAU OF INVESTIGA-TION |
| **Attorney(s):** | KAREN L. MELNIK |
| **Firm Name:** | U.S. ATTORNEY'S OFFICE |
| **Attorney Address:** | 555 FOURTH STREET, NW, ROOM E4112 |
| | WASHINGTON, DC 20530 |
| **Attorney Phone:** | 202-307-0338 |
| **Defendant:** | DEPARTMENT OF HOMELAND SECURITY |
| **Attorney(s):** | KAREN L. MELNIK |
| **Firm Name:** | U.S. ATTORNEY'S OFFICE |
| **Attorney Address:** | 555 FOURTH STREET, NW, ROOM E4112 |
| | WASHINGTON, DC 20530 |
| **Attorney Phone:** | 202-307-0338 |

## DOCKET PROCEEDINGS

| Entry#: | Date: | Description: |
|---|---|---|
| 15 | 01/24/2008 | CERTIFICATE OF INTERESTED PARTIES BY MOHAMMAD FAYYAZ AND GIZELA FAYYAZ, FILED.(MCCOLLOM, JAMES) (ENTERED: 01/24/2008) |

View Document in PDF Format

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

| 14 | 01/18/2008 | ORDER FOR INITIAL PRETRIAL AND SCHEDULING CONFERENCE AND ORDER TO DISCLOSE INTERESTED PERSONS.INITIAL CONFERENCE SET FOR 5/30/2008 AT 08:45 AM IN COURTROOM 11B BEFORE JUDGE LEE H ROSENTHAL.( SIGNED BY JUDGE LEE H ROSENTHAL ) PARTIES NOTIFIED.(JBRADFORD, ) (ENTERED: 01/18/2008) |

🖹 View Document in PDF Format

| 13 | 01/14/2008 | CASE TRANSFERRED IN FROM DISTRICT OF COLUMBIA. CASE NUMBER 1:06CV2016 EMAIL RECEIVED, COPY OF DOCKET SHEET PRINTED FROM DCDC ECF PAGE FILED BY MICHAEL CHERTOFF, EMILIO GONZALEZ, SHARON HUDSON, ROBERT MUELLER, DEPARTMENT OF HOMELAND SECURITY, MOHAMMAD FAYYAZ, GIZELA FAYYAZ.(RVAZQUEZ, ) ADDITIONAL ATTACHMENT(S) ADDED ON 1/17/2008 (RVAZQUEZ, ). (ENTERED: 01/17/2008) |

🖹 View Document in PDF Format

| 12 | 10/25/2007 | ORDER OF TRANSFER. SIGNED BY JUDGE HENRY H. KENNEDY, JR., ON OCTOBER 25, 2007. PARTIES NOTIFIED.(RVAZQUEZ, ) (ENTERED: 01/17/2008) |

🖹 View Document in PDF Format

| 11 | 10/19/2007 | MOTION FOR SUMMARY JUDGMENT BY MOHAMMAD FAYYAZ, GIZELA FAYYAZ, FILED. MOTION DOCKET DATE 11/8/2007. (ATTACHMENTS: # PROPOSED ORDER)(RVAZQUEZ, ) (ENTERED: 01/17/2008) |

🖹 View Document in PDF Format

| 10 | 05/29/2007 | REPLY TO OPPOSITION TO MOTION RE: MOTION TO DISMISS, MOTION TO TRANSFER CASE, FILED BY MICHAEL CHERTOFF, EMILIO GONZALEZ, SHARON HUDSON, ROBERT MUELLER, DEPARTMENT OF HOMELAND SECURITY. (RVAZQUEZ, ) (ENTERED: 01/17/2008) |

🖹 View Document in PDF Format

| | 04/27/2007 | RESET DEADLINES: DEFENDANTS SHALL HAVE UP TO AND INCLUDING MAY 30, 2007, WITHIN WHICH TO FILE A REPLY IN SUPPORT OF ITS MOTION TO TRANSFER OR, IN THE ALTERNATIVE, TO DISMISS. (RVAZQUEZ, ) (ENTERED: 01/18/2008) |

Send Runner to the Court

| | 04/26/2007 | MINUTE ORDER GRANTING DEFENDANTS&#039; CONSENT MOTION FOR AN ENLARGEMENT OF TIME. DEFENDANTS SHALL |

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

|   |            | HAVE UP TO AND INCLUDING MAY 30, 2007, WITHIN WHICH TO FILE A REPLY IN SUPPORT OF ITS MOTION TO TRANSFER OR, IN THE ALTERNATIVE, TO DISMISS. SIGNED BY JUDGE HENRY H. KENNEDY, JR., ON APRIL 26, 2007. OFFICIAL PAPERLESS ORDER. (RVAZQUEZ, ) (ENTERED: 01/18/2008) |
|---|------------|---|
|   |            | Send Runner to the Court |
| 9 | 04/26/2007 | CONSENT MOTION FOR EXTENSION OF TIME FILE RESPONSE/ REPLY BY MICHAEL CHERTOFF, EMILIO GONZALEZ, SHARON HUDSON, ROBERT MUELLER, DEPARTMENT OF HOMELAND SE-CURITY, FILED. MOTION DOCKET DATE 5/16/2007. (RVAZQUEZ, ) (ENTERED: 01/17/2008) |
|   |            | 🗋 View Document in PDF Format |
| 8 | 04/18/2007 | MEMORANDUM IN OPPOSITION RE:MOTION TO DISMISSCOM-PLAINT MOTION TO DISMISSCOMPLAINT BY MOHAMMAD FAYYAZ, GIZELA FAYYAZ, FILED. (ATTACHMENTS: #PROPOSED ORDER #EXHIBIT #EXHIBIT # EXHIBIT)(RVAZQUEZ, ) (ENTERED: 01/17/2008) |
|   |            | 🗋 View Document in PDF Format |
|   | 04/06/2007 | MINUTE ORDER GRANTING PLAINTIFF&#039;S SECOND UNOP-POSED MOTIONFOR ENLARGEMENT OF TIME TO RESPOND TO DEFENDANTS&#039; MOTION TO TRANSFER OR, IN THE AL-TERNATIVE, TO DISMISS. PLAINTIFF SHALL HAVE UP TO AND INCLUDING MAY 7, 2007 TO FILE A RESPONSE TO DEFENDANTS MOTION TO TRANSFER OR, IN THE ALTERNATIVE, TO DISMISS. SIGNED BY JUDGE HENRY H. KENNEDY, JR., ON APRIL 6, 2007. OFFICIAL PAPERLESS ORDER. (RVAZQUEZ, ) (ENTERED: 01/18/2008) |
|   |            | Send Runner to the Court |
| 7 | 04/06/2007 | UNOPPOSED MOTION FOR EXTENSION OF TIME TO FILE RE-SPONSE/ REPLY AS TOMOTION TO DISMISS, MOTION TO TRANS-FER CASE BY MOHAMMAD FAYYAZ, GIZELA FAYYAZ, FILED. MOTION DOCKET DATE 4/26/2007. (ATTACHMENTS: # PROPOSED ORDER)(RVAZQUEZ, ) MODIFIED ON 1/17/2008 (RVAZQUEZ, ). (ENTERED: 01/17/2008) |
|   |            | 🗋 View Document in PDF Format |
|   | 03/23/2007 | RESET DEADLINES: PLAINTIFF SHALL HAVE UP TO AND IN-CLUDING APRIL 16, 2007, TO FILE A RESPONSE TO DEFENDANTS MOTION TO TRANSFER OR, IN THE ALTERNATIVE, TO DISMISS. (RVAZQUEZ, ) (ENTERED: 01/18/2008) |

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Send Runner to the Court

03/15/2007    MINUTE ORDER GRANTING PLAINTIFF&#039;S UNOPPOSED MO-
TION FOR ENLARGEMENT OF TIME TO RESPOND TO DEFEND-
ANTS&#039; MOTION TO TRANSFER, OR IN THE ALTERNATIVE,
DISMISS. PLAINTIFF SHALL HAVE UP TO AND INCLUDING APRIL
16, 2007, TO FILE A RESPONSE TO DEFENDANTS MOTION TO
TRANSFER OR, IN THE ALTERNATIVE, TO DISMISS. SIGNED BY
JUDGE HENRY H. KENNEDY, JR., ON MARCH 15, 2007. OFFICIAL
PAPERLESS ORDER. (RVAZQUEZ, ) (ENTERED: 01/18/2008)

Send Runner to the Court

6    03/15/2007    UNOPPOSED MOTION FOR EXTENSION OF TIME TO FILE RE-
SPONSE/REPLY AS TOMOTION TO DISMISS, MOTION TO TRANS-
FER CASE BY MOHAMMAD FAYYAZ, GIZELA FAYYAZ, FILED.
MOTION DOCKET DATE 4/4/2007. (ATTACHMENTS: # PROPOSED
ORDER)(RVAZQUEZ, ) MODIFIED ON 1/17/2008 (RVAZQUEZ, ).
(ENTERED: 01/17/2008)

    View Document in PDF Format

5    03/13/2007    MOTION TO DISMISS, MOTION TO TRANSFER CASE BY MICHAEL
CHERTOFF, EMILIO GONZALEZ, SHARON HUDSON, ROBERT
MUELLER, DEPARTMENT OF HOMELAND SECURITY, FILED. MO-
TION DOCKET DATE 4/2/2007. (ATTACHMENTS: #PROPOSED OR-
DER #EXHIBIT A (HUDSON DECLARATION AND ATTACHMENTS
THERETO)#EXHIBIT B (VISA)#EXHIBIT C (MARRIAGE LICENSE)#
EXHIBIT D (BIOGRAPHIC INFORMATION))(RVAZQUEZ, )
(ENTERED: 01/17/2008)

    View Document in PDF Format

02/15/2007    DEADLINES: DEFENDANTS ANSWER DEADLINE IS EXTENDED
UNTIL MARCH 13, 2007. (RVAZQUEZ, ) (ENTERED: 01/17/2008)

Send Runner to the Court

02/15/2007    MINUTE ORDER GRANTING DEFENDANT&#039;S CONSENT MO-
TION FOR AN ENLARGEMENT OF TIME. DEFENDANTS SHALL
HAVE AN ADDITIONAL THREE (3) WEEKS UNTIL MARCH 13,
2007, IN WHICH TO SERVE AN ANSWER, MOVE, OR OTHERWISE
PLEAD TO PLAINTIFF&#039;S COMPLAINT. SIGNED BY JUDGE
HENRY H. KENNEDY, JR., ON FEBRUARY 15, 2007. OFFICIAL PA-
PERLESS ORDER. (RVAZQUEZ, ) (ENTERED: 01/17/2008)

Send Runner to the Court

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

| 4 | 02/15/2007 | CONSENT MOTION FOR EXTENSION OF TIME TO FILE A DISPOS-ITIVE MOTION BY MICHAEL CHERTOFF, EMILIO GONZALEZ, SHARON HUDSON, ROBERT MUELLER, DEPARTMENT OF HOME-LAND SECURITY, FILED. MOTION DOCKET DATE 3/7/2007. (RVAZQUEZ, ) MODIFIED ON 1/17/2008 (RVAZQUEZ, ). (ENTERED: 01/17/2008) |
|---|---|---|
| | | 🗎 View Document in PDF Format |
| 3 | 02/15/2007 | NOTICE OF APPEARANCE BY KAREN L. MELNIK ON BEHALF OF MICHAEL CHERTOFF, EMILIO GONZALEZ, SHARON HUDSON, ROBERT MUELLER, DEPARTMENT OF HOMELAND SECURITY, FILED. (RVAZQUEZ, ) (ENTERED: 01/17/2008) |
| | | 🗎 View Document in PDF Format |
| | 11/30/2006 | MINUTE ORDER GRANTING MOTION FOR PERMISSION TO AP-PEAR AND PARTICIPATE AS VISITING ATTORNEYS OR PRO HAC VICE COUNSEL. AJAY CHOUDHARY AND JAMES P. MCCOLLOM, JR., ARE PERMITTED TO APPEAR PRO HACE VICE ON BEHALF OF PLAINTIFFS IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA. SIGNED BY JUDGE HENRY H. KENNEDY, JR., ON NOVEMBER 30,2006. OFFICIAL PAPERLESS ORDER. (RVAZQUEZ, ) (ENTERED: 01/17/2008) |
| | | Send Runner to the Court |
| | 11/27/2006 | SUMMONS (7) ISSUED AS TO DEPARTMENT OF HOMELAND SE-CURITY, MICHAEL CHERTOFF, EMILIO GONZALEZ, SHARON HUDSON, ROBERT MUELLER, U.S. ATTORNEY AND U.S. ATTOR-NEY GENERAL, FILED. (RVAZQUEZ, ) (ENTERED: 01/17/2008) |
| | | Send Runner to the Court |
| 2 | 11/27/2006 | MOTION FOR AJAY CHOUDHARY AND JAMES MCCOLLOM, JR. TO APPEAR PRO HAC VICE BY MOHAMMAD FAYYAZ, GIZELA FAYYAZ, FILED. MOTION DOCKET DATE 12/18/2006. (ATTACHMENTS: #AFFIDAVIT OF AJAY CHOUD-HARY#AFFIDAVIT OF JAMES P. MCCOLLOM, JR.# TEXT OF PRO-POSED ORDER)(RVAZQUEZ, ) (ENTERED: 01/17/2008) |
| | | 🗎 View Document in PDF Format |
| 1 | 11/27/2006 | COMPLAINT AGAINST ALL DEFENDANTS (FILING FEE $ 350 RE-CEIPT NUMBER 4616000491.) FILED BY MOHAMMAD FAYYAZ, GIZELA FAYYAZ. (ATTACHMENTS: #EXHIBIT 1#EXHIBIT 2#EXHIBIT 3# CIVIL COVER SHEET)(RVAZQUEZ, ) (ENTERED: 01/17/2008) |

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

View Document in PDF Format

TO ORDER COPIES OF ANY DOCUMENTS LISTED ABOVE, CALL WESTLAW COURTEXPRESS
1-877-DOC-RETR (1-877-362-7387) (Additional Charges Apply).

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.